In re IONOSPHERE CLUBS INC. and Eastern Air Lines, Inc., Debtors.

EASTERN AIR LINES, INC., Plaintiff,

v.

Moreton ROLLESTON, Jr., and Fred Kruger, Defendants.

Nos. 89 B 10448 (BRL), 89 B 10449 (BRL).

Civ. A. Nos. 90 Civ. 3378 (MBM) to 90 Civ. 3382 (MBM) and 90 Civ. 3384 (MBM).

United States District Court, S.D. New York.

Feb. 14, 1991.

Howard Comet, Weil, Gotshal & Manges, New York City, for trustee.

Moreton Rolleston, Jr., Atlanta, Ga., for petitioners.

## OPINION AND ORDER

MUKASEY, District Judge.

This is an appeal by two defendants in the adversary proceeding brought by Eastern—Moreton Rolleston, Jr. and Fred Kruger—from an order issued by Chief Judge Lifland of the Bankruptcy Court on March 14, 1990, 111 B.R. 423, which pursuant to 11 U.S.C. § 105, (1) enjoined the defendants ("the Rolleston plaintiffs") from continuing a lawsuit in the Northern District of Georgia pending the determination of an identical unreinstated strikers' bid grievance issue in the ALPA lawsuit; (2) enjoined prosecution of their claims to freeze Eastern's assets and to receive interest on pilot pension funds, since such control over property of the estate would violate 11 U.S.C. § 362—the automatic stay; and (3) enjoined them from proceeding against Eastern's codefendants in the Georgia lawsuit. Judge Lifland also found that the Rolleston plaintiffs violated the auto-

matic stay by filing the Georgia lawsuit against Eastern after Eastern filed its petition for bankruptcy seeking to freeze $281 million in Eastern assets for alleged conversion of pilot benefit funds to Eastern's own use and alleging that Eastern violated RICO by willfully withholding interest payments on benefit funds. For the reasons set forth below, the Bankruptcy Court's rulings are affirmed in all respects other than its finding that the assertion of the RICO claim for failure to pay interest allegedly due plaintiffs violated the automatic stay.

## I.

On March 9, 1989 Eastern filed a petition for bankruptcy in the Bankruptcy Court of the Southern District of New York. On February 12, 1990 Moreton Rolleston, Jr. ("Rolleston") filed on behalf of his son, Moreton Rolleston, III, and 16 other formerly striking Eastern pilots ("the Rolleston plaintiffs") a purported class action in the Northern District of Georgia ("the Rolleston lawsuit"). In addition to Eastern, the Rolleston lawsuit names as defendants Texas Air Corporation, Jet Capital Corporation, Frank Lorenzo, Hawthorne Associates, Inc., and Trust Administrative Committee of B Plan as the Fiduciary of B Plan. The Complaint alleges violations of the Railway Labor Act ("RLA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 42 U.S.C. § 1983.

The Rolleston plaintiffs have essentially three grievances. First, in Count One of the Complaint filed in the federal court in Georgia, they allege claims based on Eastern's failure to reinstate striking pilots after the strike was terminated pursuant to the provisions of the collective bargaining agreement entered into between Eastern and the pilots prior to Eastern filing for bankruptcy ("the pilot bid issue"). Second, also in Count One, the Rolleston plaintiffs assert claims based on Eastern's alleged failure to fund the pilot's benefit plans and alleged conversion of the funds to East-

ern's own use. Appellants concede that this alleged violation of 18 U.S.C. § 664—embezzlement of pension funds— occurred prior to Eastern filing for bankruptcy. Third, in Count Two, the Rolleston plaintiffs allege a violation of RICO, the RLA and 42 U.S.C. § 1983 based on Eastern's alleged failure to pay retiring pilots interest on funds withdrawn pursuant to the benefit plans. According to the plaintiffs, under their union contract, when a pilot resigns before he reaches age 50, he is entitled to receive his share of the B Benefit Plan as that share is valued on the last day of the month during which the pilot submitted his resignation, as well as interest on that sum from the day it became due until the day he actually receives it. Plaintiffs claim that Eastern has withheld interest payments, as well as in some cases, principal, in violation of the RLA, 42 U.S.C. § 1983 and 18 U.S.C. § 664—a RICO predicate act. See 18 U.S.C. § 1961(1)(B).

Eastern filed the adversary proceeding seeking an injunction to bar defendant Rolleston and the 17 Rolleston plaintiffs from proceeding in the Georgia action, and a determination that the Rolleston lawsuit was brought in violation of the automatic stay.

■ Appellants raise several issues on appeal, of which only the following need be treated:[1] (1) Does the bankruptcy court have jurisdiction to issue an injunction under § 105 and to determine whether there has been a violation of the automatic stay? (2) Did the Bankruptcy Court correctly decide to issue such an injunction and to make such a determination? (3) Were appellants denied procedural due process? (4) Is there jurisdiction and venue over the Eastern bankruptcy proceedings in the Southern District of New York? (5) Did the Bankruptcy Judge have jurisdiction to enjoin the Rolleston plaintiffs, including their lawyer, Moreton Rolleston, Jr., from proceeding in Georgia against Eastern's co-defendants there?

---

1. Appellants raise a host of issues neither decided below nor necessary to this decision. To the extent that those issues are not specifically addressed in this opinion, appellants are advised that pursuant to the general reference of all bankruptcy cases in this district, any motions other than for withdrawal of the reference must first be made in the bankruptcy court.

## II.

■ A district court must accept the findings of fact of a bankruptcy court, whether based on oral or documentary evidence, unless clearly erroneous. Conclusions of law are reviewable *de novo*. *Truck Drivers Local 807, etc. v. Carey Transp. Inc.*, 816 F.2d 82 (2d Cir.1987).

The Bankruptcy Court has power under § 362 of the Bankruptcy Code to determine that there has been a violation of the automatic stay and enjoin the Rolleston plaintiffs from proceeding other than in this District. Under § 157 of the Judicial Code, the Bankruptcy Court has jurisdiction over core proceedings, which includes "(A) matters concerning the administration of the estate; [and] (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11." 28 U.S.C. § 157(b)(2). As quoted in *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986), the legislative history of § 362 provides, *inter alia*, that:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Id.* at 292 (quoting House Report No. 95–595, 95th Cong., 1st Sess. 340–342 (1977); Senate Report No. 95–989, 95th Cong., 2nd Sess. 54–55 (1978); reprinted in 1978 U.S. Code & Adm.News 5787 at 5840–41 and 6296–6298).

■ I agree with the Fourth Circuit that a proceeding to prosecute a violation of the automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157. Enforcement of the automatic stay is essential to orderly and equitable administration of the estate. I therefore affirm the holding of the Bankruptcy Judge that suits by the trustee to prosecute violations of the automatic stay are within the jurisdiction of the Bankruptcy Court.

## III.

Plaintiffs argue that their claims arose post-petition, and hence are not barred by the automatic stay, 11 U.S.C. § 362. Their claims fall into three categories: (1) that Eastern violated the RLA, RICO, and 42 U.S.C. § 1983 by refusing to accept bids from striking or formerly striking pilots; and that Eastern violated RICO, (2) by allegedly failing to fund its pilot pension plan and converting the benefit sums paid by the pilots to their own use, and (3) by allegedly failing to pay interest on certain pension benefits that have already been paid. *See Memorandum Decision on Motion for a Determination of Automatic Stay Violation and for a Section 105 Injunction,* slip op. at 8–9 (Bankr.S.D.N.Y. March 14, 1990).

■ Judge Lifland did not determine whether the Rolleston plaintiffs' assertion of the pilot bid grievance issue violated the automatic stay: "this Court defers determining at this time whether the inclusion of the bid procedure issue as part of the Rolleston Lawsuit violates the automatic stay." *Memorandum Decision* at p. 18. Rather, the Court analyzed the conversion claim brought in Count One—plaintiffs' claim that Eastern failed to contribute to the benefit funds and instead converted the funds to its own use—and found that the relief plaintiffs request in conjunction with this claim violates the automatic stay. Section § 362(a)(3) reads:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of— ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

Any attempt to freeze Eastern's assets and to obtain an order requiring Eastern to transfer cash from its estate to the pilot pension plans is an attempt to assert control over Eastern's assets to the detriment of other creditors. Plaintiffs argue that

the property does not belong to Eastern, but rather belongs to the pilots who made contributions to the funds out of their paychecks. Whether Eastern owes property in the form of these funds to the pilots is still a question to be decided. Even assuming Eastern does owe money to the pilots, the Rolleston plaintiffs, in asserting this claim, are in no way different from any other creditor with a claim against Eastern. They articulate no reason why they are entitled to any preferred status, nor could they. I affirm the Bankruptcy Court's determination that the relief requested—freezing $281 million in Eastern assets—is "a direct attempt to secure preferred status for a discrete group of creditors [which] runs directly counter to the distribution and oversight scheme established by the Code" and that that attempt was made in violation of 11 U.S.C. § 362(a)(3).

The Bankruptcy Court found that the claims outlined in Count Two of plaintiffs' Complaint were brought in violation of the automatic stay. According to the Bankruptcy Court, Count Two "represents a clear effort to asset a claim against the estate and to control property of the estate." Be that as it may, not all claims brought against an estate are brought in violation of the automatic stay. Plaintiffs argue that these claims are post-petition claims, and therefore do not violate the automatic stay, because the alleged racketeering activity which is the basis for their claims occurred after the petition was filed. Eastern filed its petition in March 1989. According to plaintiffs' Complaint, the plaintiff pilots who did not receive interest on the benefit funds taken out of Plan B retired in November and December 1989. The interest on that principal would, under plaintiffs' theory, begin to accrue and become due only after the filing.

■ Eastern maintains that these are pre-petition claims arising out of an executory contract within the meaning of 11 U.S.C. § 365(g)(1), which states:

"(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition...."

Plaintiffs claim that their right to interest is based on their union contract. Under *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), collective bargaining agreements are executory contracts within the meaning of § 365. The collective bargaining agreement between the Eastern pilots and Eastern has been neither assumed nor rejected as of the present. Therefore, if plaintiffs asserted a claim for breach of the union contract, that claim would be considered a pre-petition claim, even if the activities which allegedly constitute the breach occurred post-petition, and would be stayed under 11 U.S.C. § 362.

■ The Bankruptcy Court did not address whether Count Two asserted pre- or post-petition claims. Because I find that the Rolleston plaintiffs seem to be articulating claims that arose post-petition, I remand this issue to the Bankruptcy Court so that it can reconsider, if necessary, its determination that these claims were brought in violation of § 362. It may be that because Rolleston and the Rolleston plaintiffs are enjoined from pursuing the Georgia lawsuit under 11 U.S.C. § 105, and because Eastern, as a corporation, is not entitled to damages under 11 U.S.C. § 362(h) for violations of the automatic stay, it makes little difference whether Count Two violates § 362. Plaintiffs do not assert a claim for breach of contract in Count Two. I therefore need not decide the effect of 11 U.S.C. § 1113, adopted in response to *Bildisco & Bildisco*, on § 365(g) and collective bargaining agreements. Rather, they assert a violation of RICO. A RICO claim arises when the plaintiff discovers or should have discovered an injury caused by defendant's violation of 18 U.S.C. § 1962. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir.), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1988). Plaintiffs

assert that, after filing for bankruptcy, Eastern embezzled interest payments due pilots on their share of the B Benefit Fund. Their alleged injury was suffered post-petition, and therefore their claims are post-petition claims and assertion of them did not violate the automatic stay.

## IV.

■ Plaintiffs also challenge jurisdiction and venue over the Eastern bankruptcy proceedings in the Southern District of New York. Neither of these challenges was properly raised in the bankruptcy proceedings. The Eastern Air Lines bankruptcy case remains in the Bankruptcy Court pursuant to the general reference of all bankruptcy cases in this district. Therefore, their venue and jurisdiction arguments must first be brought in the Bankruptcy Court. Should plaintiffs persist in pressing these arguments in the face of Bankruptcy Rule 9011, the Bankruptcy Court will regain jurisdiction to decide questions raised for the first time in the Bankruptcy Court proceedings after plaintiffs filed this appeal upon its resolution.

## V.

■ Plaintiffs Kruger and Rolleston contend that they were denied due process in that they were given no notice of hearings before Judge Lifland on March 23, 1990 and March 29, 1990 which were the basis for the opinions from which they appeal. They raise three points: (1) that Kruger received absolutely no notice, (2) that Rolleston did not receive notice until three days before the hearing on the preliminary injunction and one day before the hearing on the permanent injunction—insufficient preparation time to constitute reasonable notice, and (3) the permanent injunction hearing was held before plaintiffs' time had run to file responsive pleadings in the adversary proceedings.

There was no hearing on March 29, 1990. March 29th was the day the order granting a permanent injunction was issued; the hearing on the motion for the permanent injunction was held on March 23, 1990.

The Bankruptcy Court found that Rolleston received adequate notice of the permanent injunction hearing held on March 23, 1990, and I affirm that finding. On March 9, 1990, Rolleston received the Verified Complaint in the Adversary Proceeding, Exhibits thereto, and a Temporary Restraining Order and Order Pursuant to Bankruptcy Rule 7065 Directing Defendant to Show Cause Why a Determination Under Bankruptcy Code Sections 362(a) Should Not Be Issued, directing the Rolleston plaintiffs to appear at a preliminary injunction hearing on March 14, 1990. (Exhibit I, Exhibit G)

Rolleston chose not to appear at the preliminary injunction hearing, and instead filed a motion in the Georgia action for withdrawal of the reference of the Adversary Proceedings in the Bankruptcy Court in the Southern District of New York under 28 U.S.C. § 157(d), and transfer under 28 U.S.C. § 1404(a). Rolleston identified himself in those moving papers as attorney for himself and for all defendants in the adversary proceeding other than four defendants not appellants here. Judge Camp of the Northern District of Georgia denied Rolleston's "extraordinary request." (Exhibit K)

At the preliminary injunction hearing, Judge Lifland denied Eastern's request to consolidate the preliminary and permanent injunction hearings under Fed.R.Civ.P. 65 in order to give the Rolleston plaintiffs another opportunity to appear and be heard.

According to the Affidavit of Service attached as Exhibit M, on March 15, 1990 Rolleston received a letter from Eastern's Atlanta lawyer, David Brown of Smith, Gambrell & Russell, enclosing the Judge Lifland's preliminary injunction order and stating in the third paragraph: "Judge Lifland has also set a hearing for Friday, March 23, at 10:00 a.m. in New York to determine whether a permanent injunction should issue along the lines as described above." In addition, on March 22, 1990, Smith hand-delivered to Rolleston a letter confirming a telephone conversation between them earlier that day regarding the

hearing scheduled March 23rd. (Exhibit M) Neither Rolleston himself nor any of the Rolleston plaintiffs appeared at the March 23rd hearing. The Bankruptcy Court granted the permanent injunction at the conclusion of the hearing, issuing the Order on March 29, 1990. Rolleston therefore received eight days notice of the permanent injunction hearing. Smith's letter enclosing the preliminary injunction order was delivered to Rolleston's office on March 15, 1990. Rolleston's secretary informed Smith that Rolleston was out of town until March 20th. Smith advised the secretary of the contents of the documents enclosed and told her that Rolleston should be contacted as soon as possible. Rolleston does not deny that his office received the letter, but rather states that *he* did not receive notice of the permanent injunction hearing until March 20, 1990. Under the circumstances, I must agree with the Bankruptcy Court that Rolleston received reasonable notice before the permanent injunction hearing.

█ There is no requirement under the Federal Rules of Civil Procedure that the Bankruptcy Judge delay the permanent injunction hearing until after the time had run for the Rolleston plaintiffs to file an Answer to the Complaint in the Adversary Proceeding. Judge Lifland could have accelerated the permanent injunction hearing in order to consolidate it with the hearing on the preliminary injunction under Fed.R. Civ.P. 65(a)(2). If he had, he would only have had to ensure that the parties have adequate notice of the consolidation and an opportunity to present any relevant evidence. *Reese Publishing Co. v. Hampton Int'l Communications, Inc.,* 620 F.2d 7 (2d Cir.1980). There is no requirement that the defendant—here the Rolleston plaintiffs—must have filed an answer before a permanent injunction may issue, or that the time to do so have expired. Judge Lifland did not in fact consolidate the hearings but rather put off the permanent injunction hearing in order to ensure that the Rolleston plaintiffs had an adequate opportunity to present arguments why their Georgia lawsuit was not in violation of the automatic stay and why an injunction under

§ 105(a) should not be issued. Rolleston did not request from the Bankruptcy Court a stay of the hearing so that he could conduct discovery.

Kruger received adequate notice through notice to his attorney, Moreton Rolleston, Jr. Judge Lifland found in a Memorandum Endorsement read into the record on April 24, 1990 that all of the plaintiffs in the Rolleston lawsuit are represented by Moreton Rolleston, their attorney in the Atlanta proceedings, and that Rolleston, as their attorney, was properly noticed for the hearings. Judge Lifland cites as evidence various documents filed by plaintiffs in the bankruptcy proceedings, including a "Designation of Clerk for Service" which requests the Clerk of the Court to forward any papers which are served upon that Rolleston Plaintiff, not to that individual's personal address but to the address of Rolleston's Atlanta law office. Again, Rolleston identified himself in his motion to withdraw the reference and transfer the adversary proceeding as attorney for himself and for all defendants *in the adversary proceeding* other than four defendants who are not appellants here. I affirm Judge Lifland's findings of fact and his conclusion that Kruger received adequate notice, and furthermore agree with the Bankruptcy Court that Rolleston's assertion that he is an attorney for his clients at his discretion, only when it suits his and their ends, is a manipulative attempt to abuse the system.

## VI.

█ The final question on appeal is, did the Bankruptcy Court properly enjoin the Rolleston plaintiffs, including Moreton Rolleston, Jr., their attorney, from proceeding in the Georgia action against Eastern's co-defendants in that suit: Texas Air Corporation, Jet Capital Corporation, Frank Lorenzo, Trust Administrative Committee of B Plan as the Fiduciary of B Plan and Hawthorne Associates, Inc., none of whom are petitioners in bankruptcy. Appellants contend that the Bankruptcy Court lacked jurisdiction to issue that injunction. Under 11 U.S.C. § 105(a) a bankruptcy judge has

the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This power, though it can be exercised only within the confines of the Bankruptcy Code, extends to creditor's actions against third parties, when such an injunction is necessary to protect the debtors and the parties in interest to the reorganization in their attempt to reorganize successfully. *In re Chateaugay Corp.*, 109 B.R. 613, 621–22 (S.D.N.Y.1990); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1003 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The Bankruptcy Court found that continuation of the Rolleston lawsuit against Eastern's co-defendants would involve, burden and directly affect Eastern, and would likely prejudice Eastern's future defense of identical claims based upon identical facts. The Rolleston lawsuit therefore could adversely affect the debtor's estate and accordingly could be enjoined as to all defendants. The Bankruptcy Court found also that the claims against Eastern's co-defendants were " 'inextricably interwoven' " with the claims against Eastern, " 'presenting common questions of law and fact, which can be resolved in one proceeding.' " *Memorandum Decision* at 24 (quoting *Federal Life Ins. Co. v. First Financial Group Inc.*, 3 B.R. 375, 376 (S.D.Tex.1980); *accord In re Johns–Manville Corp.*, 26 B.R. 420 (Bankr.S.D.N.Y.1983). In view of these findings based on the facts before it, which I cannot find clearly erroneous, I affirm the judgment of the Bankruptcy Court that an injunction is warranted against continued prosecution of the Rolleston lawsuit against Eastern's co-defendants other than in the Bankruptcy Court.

Appellants argue that the injunction has become moot because of the appointment of a trustee after the injunction was issued and because their suit has not interfered with the reorganization. According to appellants, these developments indicate that the reasons for issuing the injunction no longer exist. Pursuant to the general reference in this District of all matters to the Bankruptcy Court, any issue as to whether there has been a change in circumstances such that the injunction should be modified or lifted must first be raised there.

\* \* \* \* \* \*

For the reasons set forth above, the Bankruptcy Court's Orders dated March 14 and March 29, 1990 are affirmed, except as to the finding that the Rolleston plaintiffs' RICO claim as articulated in Count Two was brought in violation of the automatic stay.

SO ORDERED.