In re CARABETTA ENTERPRISES, INC., Debtor.

CARABETTA ENTERPRISES, INC., a Connecticut Corporation, and Ocean Mile Development Group, a New Jersey Limited Partnership, Plaintiffs,

v.

The CITY OF ASBURY PARK, a Municipal Corporation of the State of New Jersey, The Mayor and Council of the City of Asbury Park, Dennis M. Buckley, Patricia H. Candiano, Angelo A. Chinnici, M.D., William H. Harrington, Carl Williams, Jr., and John Doe(s), Defendants.

Bankruptcy No. 92–51917.
Adv. No. 93–5267.

United States Bankruptcy Court,
D. Connecticut.

Dec. 30, 1993.

---

Dominic J. Aprile, Bathgate, Wegener, Dugan & Wolf, P.C., Newark, NJ, Jon P. Newton, Reid and Riege, P.C., Hartford, CT, for plaintiffs.

Thomas A. Pliskin, Giordano, Halleran & Ciesla, Middletown, NJ, Mark I. Fishman, Pullman & Comley, Bridgeport, CT, for defendants.

## MEMORANDUM AND MODIFIED ORDER ON ORDER TO SHOW CAUSE

ALAN H.W. SHIFF, Bankruptcy Judge.

On December 16, 1993, I entered an order in open court granting a preliminary injunction in favor of the plaintiffs Ocean Mile Development Group, a New Jersey limited partnership ("Ocean Mile") and the debtor Carabetta Enterprises, Inc. (hereafter collectively the "plaintiffs"). That order, which has remained fully effective since the date of its entry, is modified by this Memorandum and Modified Order on Order to Show Cause.

## BACKGROUND

On April 2, 1986, Asbury Park, or "the City," entered into a redevelopment agreement (the "Agreement") with Ocean Mile. The debtor Carabetta Enterprises, Inc. is both a general and limited partner in Ocean Mile, and its interests aggregate approximately 93 percent of all ownership interests in Ocean Mile. On April 8, 1987, Ocean Mile leased certain of the properties to be redeveloped from the City. Ocean Mile did not meet certain performance deadlines under the Agreement and on November 20, 1991, requested that the City agree to a modification. Under the Agreement, the City could not unreasonably refuse to modify the Agreement. On December 18, 1991, the City passed a resolution that the delays were not excusable and that it would not amend the Agreement.

On December 31, 1991, Ocean Mile commenced certain arbitration proceedings against the City, seeking a determination that its delays were excusable under the Agreement and that the City's refusal to modify it was unreasonable. On February 19, 1992, the City passed a resolution to send Ocean Mile a notice of default and to terminate the Agreement. On February 25, 1992 and April 1, 1992, the city manager sent notices of default under the Agreement and the related lease of City property. On April 9, 1992, Ocean Mile commenced a law suit in New Jersey state court to set aside the foregoing resolutions. That action is pending. On July 29, 1992, the debtor commenced the instant chapter 11 case. On June 28, 1993, in connection with the state court action, the City and Ocean Mile entered into a settlement (the "Settlement") whereby Ocean Mile agreed to obtain by November 15, 1993 a binding commitment of $130 million to finance the project. *See Plaintiffs' Exhibit 2.* Under the Settlement, Ocean Mile delivered in escrow a deed to the real property in the project, its resignation as the project developer, a general release of the City, and an assignment of lease. Failing achievement of its financing goal, those items were to be delivered to the City. A dismissal with prejudice of all pending actions against the City was placed in escrow, to be released if this court approved the Settlement; the parties were to mutually determine an appropriate course of action as to that dismissal if this

court did not approve the Settlement by November 25, 1993.

The Settlement was presented to this court on August 3, 1993. The debtor claimed the Settlement was in the estate's interest. The creditors' committee requested further time to study the tax ramifications of the Settlement. An order approving the Settlement has not entered.

Ocean Mile did not obtain the requisite financing commitment. The plaintiffs allege that the City published false and disparaging information against Ocean Mile, coerced it to forbear from exercising its legal rights, conspired to terminate its rights as project developer, and hindered and interfered with its efforts to consummate financing. The plaintiffs claim that the City's actions violated a provision of the Settlement whereby the City agreed to cooperate with Ocean Mile's efforts to obtain financing and to use its best efforts to assist Ocean Mile in obtaining necessary approvals and permits. *See* Settlement, p. 10.

The City, on the other hand, claims that Ocean Mile defaulted under the Agreement and the Settlement by (i) failing to make $1 million payments on December 31, 1991 and December 31, 1992, in lieu of taxes, (ii) failing to meet deadlines to commence construction, and (iii) failing to obtain financing commitments by August 19, 1991 (or, if the Settlement was effective, by November 15, 1993). The Agreement allegedly provided for excusable delays for the construction covenants, but not for the covenants to pay money and to obtain financing.

On November 9, 1993, the debtor's counsel sent a letter to the City saying that the court had not yet approved the Settlement and that any adverse action by the City against Ocean Mile would violate the automatic stay. On November 15, 1993, the city manager allegedly announced publicly that the City would seek the release of the escrowed documents.

On November 17, 1993, the plaintiffs filed the instant Application in Support of Order to Show Cause and a Verified Complaint. In Count I of that complaint, they seek (i) a declaration that the Settlement and stipulated dismissal are void, (ii) a declaration that the Agreement and lease are effective, (iii) an injunction preventing the City from terminating those agreements or exercising any remedies under them, (iv) an order that the escrowed items be returned to Ocean Mile, and (v) attorneys fees and costs. Other counts allege breach of the Settlement, breach of the duties of good faith and fair dealing, economic duress, unconscionability, mistake of fact, estoppel, and violation of the New Jersey Open Public Meetings Act. The complaint seeks damages, including punitive damages.

On November 17, 1993, this court entered an Order to Show Cause (the "OSC") setting November 29, 1993 as the date for the defendants to show cause why this court should not issue an order enjoining the City from taking any action which would negatively impact on Ocean Mile's rights as redeveloper under the Agreement. Notwithstanding the issuance of the OSC, the matter presently before the court is an application for a preliminary injunction under Rule 65 Fed.R.Civ. P., made applicable by Rule 7065 Fed. R.Bankr.P., and the plaintiffs have the burden of proof. The plaintiffs seek to enjoin, pending a trial on the merits, any declaration of a default under the Agreement and Settlement, any enforcement actions by the defendants under those and the related escrow documents, and the release of the documents placed in escrow.

## DISCUSSION

### I. Trial Testimony

Joseph Carabetta, the secretary and treasurer of the debtor, testified as follows. The debtor has contributed approximately $60 million to Ocean Mile for the Asbury Park project. Ocean Mile owes $39 million of that amount to the debtor. The City agreed to cooperate "one hundred percent" with Ocean Mile in assisting Ocean Mile to obtain the financing commitment required under the Settlement. Notwithstanding that agreement, the City did not cooperate and in fact commenced a newspaper campaign disparaging Ocean Mile. A member of the city council said he would make it "difficult" for Ocean Mile and that Ocean Mile representatives

would not be welcome in the city council if Ocean Mile did not return certain leased property to the City. City representatives were working with another potential developer. City inspectors were sent to inspect the properties and come up with violations to harass Ocean Mile.

Michael J. Fiondella, the accountant for Ocean Mile and the debtor, testified as follows. Ocean Mile owes a $36 million receivable to the debtor. If Ocean Mile's development rights are terminated in the debtor's 1993 fiscal year, the debtor would be able to take a bad debt deduction for that amount in 1993. However, because the debtor would have no income to offset that deduction, it would not benefit the estate. The debtor as Ocean Mile's general partner would receive discharge of indebtedness income if the receivable was eliminated. That income would first be applied to eliminate the debtor's net operating losses and then would be applied to adjust the debtor's basis in certain properties. On the other hand, because the debtor anticipates some $30 million of taxable income in its 1994 fiscal year from certain refinancing arrangements, if the debtor recognizes the loss in 1994, it will be able to offset all of that income. The estate's tax burden would be reduced by 45 to 55 percent in that event.[1]

A city councilman, Dr. Angelo Chinnici, testified as follows. Ocean Mile owns property in the redevelopment area with a tax assessed value of over $15 million. If Ocean Mile forfeits its rights under the Agreement and Settlement, it would have to reconvey four pieces of property with a total tax assessed value of approximately $285,000.00. Under the Settlement, the City would be obligated to sell those parcels, with the proceeds to be applied first to costs of sale, then to reimburse Ocean Mile for any improvements it had made on the parcels, with the remaining net proceeds to be divided equally between Ocean Mile and the City. The City recently experienced a revenue shortfall of $5.6 million, and received $5.2 million from the State of New Jersey. The proposed redevelopment was to bring new jobs to the City and rehabilitate the beachfront. There has been no construction in Ocean Mile since 1986. A theater leased to Ocean Mile was covered with debris. Dr. Chinnici never threatened Mr. Carabetta. Ocean Mile has not complied with its construction and financing obligations under the Agreement.

## II. Jurisdiction

28 U.S.C.A. § 157 (West 1993) provides in relevant part:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments. . . .

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate; . . .

(G) motions to terminate, annul, or modify the automatic stay; . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship. . . .

■ The matter before me is a core proceeding. First, it is observed that courts have held that applications for preliminary injunctions under § 105(a) are core proceedings.

An action brought to restrain interference resulting from proceedings in conflict with reorganization clearly may by its nature be core . . . since it will likely affect the administration of the estate. And in our view, if the bankruptcy court may ever use

---

1. Counsel for the defendants questioned Mr. Fiondella regarding the effect of 26 U.S.C.A. § 108 (West Supp. Nov. 1993) on his analysis, but Mr. Fiondella was not familiar with that section. That section provides generally that gross income does not include discharge of indebtedness income occurring in a title 11 case, § 108(a)(1), and that the excluded income is applied to reduce the debtor's tax attributes, includ-

ing net operating losses and property basis, § 108(b)(1), (2)(A) and (E), 26 U.S.C.A. § 1017 (West Supp. Nov. 1993). The defendants offered no testimony or argument suggesting that Mr. Fiondella's analysis failed to account for the consequences of § 108 or that the estate would not suffer the adverse consequences as to which Mr. Fiondella testified.

its equitable powers under section 105(a) to enjoin actions pursued in other courts as "concerning the administration of the estate" under section 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action.

*Manville Corp. v. Equity Security Holders Comm. (In re Johns–Manville Corp.),* 801 F.2d 60, 64 (2d Cir.1986) (action to enjoin equity committee from pursuing state court action to compel a shareholders' meeting was a core matter). In finding that it had core jurisdiction to enjoin a state court proceeding against principal employees of a debtor who had guaranteed the debtor's indebtedness, the court in *Rustic Mfg., Inc. v. Marine Bank Dane County (Matter of Rustic Mfg., Inc.),* 55 B.R. 25, 29 (Bankr.W.D.Wis.1985) held:

> [The debtor] is requesting this court to enjoin [a creditor] from enforcing its contract rights against the guarantors in state court.... However, this court is not determining the validity of these guaranties, it is determining only whether an injunction should issue against [the creditor]. While the equitable right to an injunction is created by both federal and state law, [the debtor] is asking this court to issue an injunction pursuant to its powers under 11 U.S.C. § 105(a). Therefore, the action involves rights arising under a federal statute which authorizes the exercise of equity founded primarily on the federal bankruptcy laws.

(Citations omitted).

*See also Gathering Restaurant, Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restaurant, Inc.),* 79 B.R. 992, 997–98 (Bankr.N.D.Ind.1986) (application to enjoin creditor from pursuing state court action against non-debtor guarantor was core proceeding); *In re Monroe Well Serv., Inc.,* 67 B.R. 746, 754 (Bankr.E.D.Pa.1986) (proceeding to enjoin actions against non-debtors was a core proceeding).

■ Second, the plaintiffs allege that the City's proposed actions would violate the automatic stay imposed by § 362. *See* Verified Complaint, November 17, 1993, at ¶ 53; Ap-plication in Support of Order to Show Cause, November 17, 1993, at ¶ 27; Plaintiffs' Memorandum of Law, November 17, 1993, at pp. 11–12. Actions to enjoin or prosecute violations of the automatic stay, or to determine the applicability of the automatic stay, are core proceedings. *Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.),* 124 B.R. 635, 638 (S.D.N.Y.1991) (action seeking an injunction to prevent the continuation of a lawsuit and for a determination that the lawsuit was in violation of the automatic stay was a core proceeding). *See also Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Lit.,* 140 B.R. 969, 974 (N.D.Ill.1992); *Republic Health Corp. v. Coral Gables, Ltd. (In re REPH Acquisition Co.),* 134 B.R. 194, 204 (N.D.Tex.1991) (action by debtor and co-lessee to enjoin eviction action as violative of the automatic stay was a core matter); *In re Torrez,* 132 B.R. 924, 933 (Bankr.E.D.Cal.1991).

■ Third, this proceeding seeks to enjoin the enforcement of a post-petition contract, i.e. the Settlement. Disputes regarding postpetition contracts *with the debtor* are core proceedings. *Ben Cooper, Inc. v. Insurance Co. of the State of Pennsylvania (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1400 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). While the debtor is not a direct party to the Settlement, it does have serious ramifications as to the debtor and estate property. As noted, the parties sought (and have not yet obtained) this court's approval of the Settlement. Further, the underlying adversary proceeding is premised on alleged post-petition wrongful acts, including the alleged breach of the Settlement by the City, which could have a substantial adverse effect on the bankruptcy estate. *See Germain v. Connecticut Nat'l Bank (In re O'Sullivan's Fuel Oil Co., Inc.),* 88 B.R. 17, 20–21 (D.Conn.1988) (state law claims by the debtor against a creditor were core matters where post-petition acts heavily dominated over prepetition acts). Thus, this matter is not analogous to those cases which hold that an action for breach of a prepetition contract is not within

the core jurisdiction of the bankruptcy court. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1102 (2d Cir.1993). Indeed, it is important to emphasize that the instant Order to Show Cause is not a breach of contract action at all; it is an action invoking this court's equitable powers under the code to enjoin an action which will negatively impact on property of the estate.

The evidence supports the conclusion that, if the instant preliminary injunction does not enter, valuable estate assets will be lost, including the debtor's account receivable from Ocean Mile and the debtor's bad debt deduction—which is useless to the debtor in the debtor's 1993 fiscal year. The plaintiffs have properly invoked this court's core jurisdiction to seek a preliminary injunction to prevent that harm to the estate and preserve the debtor's prospects of achieving reorganization.[2]

### III. Injunction Authority Under § 105

■ Bankruptcy courts in this circuit have authority under § 105(a) to enter injunctions that are necessary to restrain actions which "might impede the reorganization process." *MacArthur Co. v. Johns–Manville Corp (In re Johns–Manville Corp.),* 837 F.2d 89, 93 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (upholding channeling injunction barring suits against debtor's insurance companies); *see Official Comm. of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines, Inc.),* 928 F.2d 565, 574 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991) (bankruptcy court properly enjoined debtor's parent from taking a worthless stock deduction which would have

eliminated the debtor's net operating loss); *In re Ionosphere Clubs, Inc., supra,* 124 B.R. at 642 (bankruptcy court's injunction power "extends to creditor's actions against third parties, when such an injunction is necessary to protect the debtors and the parties in interest to the reorganization in their attempt to reorganize successfully."); *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.),* 117 B.R. 789, 801–02 (Bankr. S.D.N.Y.1990) (enjoining creditor fraudulent transfer actions against non-debtors); *LTV Corp. v. Miller (In re Chateaugay Corp.),* 109 B.R. 613, 621 (S.D.N.Y.1990) ("The power of the Bankruptcy Court to issue an injunction in order to preserve the integrity of the reorganization process is well established. . . . The reach of bankruptcy jurisdiction encompasses all matters the outcome of which could affect the debtor or its reorganization."), *appeal dism'd,* 924 F.2d 480 (2d Cir.1991); *The Litchfield Co. of South Carolina Ltd. Partnership v. The Anchor Bank (In re The Litchfield Co. of South Carolina Ltd. Partnership),* 135 B.R. 797, 806–07 (W.D.N.C.1992) (affirming bankruptcy court which enjoined a creditor from prosecuting collection actions against the debtor's partners and the estate of a deceased principal who had personally guaranteed the debtor's debt).

Pursuant to their authority under § 105, courts have stayed creditor actions against non-debtor third parties where they have found that the estate will be adversely affected because the action will impede the non-debtor third party from injecting funds into the reorganization, because the action would detract from the invaluable time and attention the non-debtor third

---

**2.** While I do not at present reach the issue of this court's jurisdiction as to the merits of this adversary proceeding, I do note that this court has at a minimum jurisdiction to hear that proceeding as a related matter under 28 U.S.C. § 157(c). A proceeding is "related" to a bankruptcy case and thus may be heard by a bankruptcy judge if "its outcome might have any 'conceivable effect' on the bankrupt estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992). The debtor need not be a party to a proceeding in order for it to be deemed a related proceeding.

An action between nondebtors is regarded as related to a bankruptcy case if its outcome would affect the amount of property available

for distribution to the creditors of the bankruptcy estate or the allocation of property among such creditors, or if the resolution of the action would alter the debtor's rights or liabilities, such civil proceeding would be regarded as related to the bankruptcy case.

*Trager v. Internal Revenue Serv. (In re North Star Contracting Corp.),* 146 B.R. 514, 519 (Bankr. S.D.N.Y.1992); *see also Occidental Chem. Corp. v. Sacramone (In re Commodities Trading Corp.),* Case No. 91–50937, Adv.P. No. 91–5156 (Bankr. D.Conn., October 26, 1992) (where the result of a dispute between nondebtors would affect the amount of a creditor's claim against the estate, the dispute was a related proceeding) *aff'd,* Civil No. 5–92–00736 (AHN) (D.Conn., Feb. 19, 1993).

party would otherwise devote to the continued operation of the debtor's business or the reorganization effort, or because the claims against the non-debtor third parties are really claims against the debtor and therefore impair the automatic stay.

*The Chase Manhattan Bank (Nat'l Ass'n) v. Third Eighty–Ninth Assocs. (In re Third Eighty–Ninth Assocs.),* 138 B.R. 144, 147 (S.D.N.Y.1992).

■ I recognize that "assets owned by a partnership are not included in the bankruptcy estate of an individual partner ... [and] that assets of a partnership may not be administered in the bankruptcy case of a member partner." *In re Funneman,* 155 B.R. 197, 200 (Bankr.S.D.Ill.1993) (citations omitted). *Accord U.S. West Fin. Servs., Inc. v. Berlin (In re Berlin),* 151 B.R. 719, 723 (Bankr.W.D.Pa.1993); *In re Palumbo,* 154 B.R. 357, 358–59 (Bankr.S.D.Fla.1992). However, this is not a case involving merely the incidental decline in value of a debtor-partner's interest in a non-debtor partnership resulting from the exercise of legal remedies against the partnership.

The evidence here demonstrates that the actions the plaintiffs seek to enjoin would adversely affect any prospect that Ocean Mile could repay the receivable to the estate and the prospect that the estate would benefit from a bad debt tax deduction. Moreover, the potential dividend to be paid to unsecured creditors of this estate will likely be substantially reduced or eliminated if the City is permitted to proceed with its actions against Ocean Mile.

While I reserve a determination as to whether the automatic stay is directly implicated for the trial of this adversary proceeding, substantial Second Circuit authority supports the plaintiffs' argument that that stay should be extended to the City's proposed actions against Ocean Mile. For example, in *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse,*

*Inc.),* 835 F.2d 427 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988), the Second Circuit held that the automatic stay precluded a landlord from terminating the prime lease of a non-debtor tenant where the legal effect of that termination would be to eradicate the sublease of the debtor subtenant. The court held: "If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *Id.* at 431. To similar effect is the more recent case of *In re Prudential Lines, Inc., supra,* 928 F.2d 565, in which the court held that the automatic stay precluded an entity related to the debtor from taking a worthless stock deduction where that would eliminate a valuable net operating loss of the debtor. *See also Plessey Precision Metals, Inc. v. Metal Center, Inc. (In re Metal Center, Inc.),* 31 B.R. 458 (Bankr.D.Conn.1983). While I need not, and do not, find that the automatic stay is implicated at this stage of the proceeding,[3] it is my view that the broad policy underlying that stay is not lost in the setting of an application for a preliminary injunction.

Even if the automatic stay is not directly implicated, the right of the plaintiffs to prove their entitlement to a preliminary injunction under the applicable standard is not diminished. *Hudgins v. Life Sav. Bank (In re Hudgins),* 153 B.R. 441, 445 (Bankr.E.D.Va. 1993) (even though foreclosure action against non-debtor partnership did not violate automatic stay in the partners' bankruptcy, debtor-partners could maintain a cause of action for an injunction under § 105); *LTV Steel Co., Inc. v. Bd. of Educ. of the Cleveland City School Dist. (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y.1988) (" '[T]he Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings.' " (quoting *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Bald-*

---

**3.** I note that it does not appear that this is an action to recover a claim against the debtor under § 362(a)(1), *see F.D.I.C. v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125, 131–32 (2d Cir.1992), because the debtor is not a party to the Agreement or the Settlement. There is, how-

ever, an argument that the City's actions qualify as an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See* § 362(a)(3).

*win United Corp. Litig.),* 765 F.2d 343, 348 (2d Cir.1985))).

## IV. Preliminary Injunction

■■■ In this Circuit, the "party seeking preliminary injunctive relief must establish: (a) irreparable harm and (b) either (i) a likelihood of success on the merits of the underlying claim or (ii) sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and a balance of the hardships tipping decidedly toward the movant." *Sweeney v. Bane,* 996 F.2d 1384, 1388 (2d Cir.1993). The irreparable harm requirement is met in the bankruptcy context "[w]here there is a showing that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects...." *Alert Holdings, Inc. v. Interstate Protective Servs., Inc. (In re Alert Holdings, Inc.),* 148 B.R. 194, 200 (Bankr.S.D.N.Y. 1992). Because the issuance of an injunction, which has the effect of barring actions against a non-debtor, has the incidental effect of extending the protection of the automatic stay to that non-debtor, such injunctions should be granted sparingly by the bankruptcy court. *In re Third Eighty–Ninth Assocs., supra,* 138 B.R. at 146.

### a. Irreparable Harm

■■■ The debtor is the general partner of Ocean Mile and indisputably has a significant interest in the success or failure of that enterprise. The plaintiffs have offered evidence to prove that Ocean Mile had contract rights to continue as the developer in the redevelopment project in the City and that the success of that project would enhance the debtor's chance of collecting a large debt owed to it by Ocean Mile. Indeed, if a preliminary injunction does not enter, there is a certainty that the City will take steps to eliminate Ocean Mile's rights under certain development contracts, and that action will eliminate the possibility of the flow of approximately $36 million to the estate. Moreover, that loss could not be offset against income in this tax year. However, any such loss next year could be offset against antici-pated income. I am satisfied that the plaintiffs have sustained the burden of proving the first prong of the test.

### b. Likelihood of Success

I am not satisfied that the plaintiffs will succeed on the merits, but I do find sufficiently serious questions going to the merits to make them a fair ground for litigation. For example, evidence was adduced to the effect that the defendants had interfered with Ocean Mile's performance under the Settlement between the parties. I emphasize that no such finding is made by this Order. I merely state that a serious question going to the merits has been raised by the plaintiffs' claims.

### c. Balance of Hardships

I also find that the balance of hardships tips decidedly in the plaintiffs' favor. The plaintiffs face an irrevocable loss of rights to and from a project in which tens of millions of dollars have been invested. While the City argues that Ocean Mile will lose only a few parcels of property if the Settlement is enforced and that the project will never be profitable, even under that view, the plaintiffs will suffer a quantifiable economic loss of half of the net proceeds from the resale of the property Ocean Mile will lose. On the other side of the equation, the City offered evidence that its tax base continues to erode. While I do not suggest that the City's plight is anything less than serious, the City has not shown that its plight will improve if the requested relief does not enter. There has been no showing that another redeveloper is available to substitute for Ocean Mile or that a relatively brief delay pending a trial on the merits of the plaintiffs' complaint will delay the replacement of Ocean Mile.

I recognize the City's need to retain the right to enter into preliminary negotiations with potential developers and for a speedy resolution of the plaintiffs' action. This court's order will attempt to accommodate those concerns. Following the filing and exchange of certain pretrial documents which will be itemized in a pretrial order, I will consider the propriety of abstaining from hearing this adversary proceeding in order to

ensure the most speedy resolution of this matter.

### d. Bond

I conclude that Ocean Mile may not claim the debtor's exemption from posting security as a condition precedent to the issuance of this preliminary injunction. *See* Rule 7065, Fed.R.Bankr.P.; Rule 65(c), Fed.R.Civ.P. However, based on the evidence presented at the preliminary injunction hearing on December 1, 1993, and the arguments of counsel on December 16, 1993, I find that no bond is required at the present time. *See Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd.*, 658 F.Supp. 1205, 1211 (S.D.N.Y.1987) (the district court has discretion to determine the amount of the bond and may require no bond if appropriate). The City has given me no basis to assess the appropriate amount of a bond, arguing only that its tax revenues will be harmed while the preliminary injunction remains effective. Of course, that is true only if and to the extent that another acceptable developer is prepared to replace Ocean Mile and the redevelopment project succeeds. As the preliminary injunction will be tailored to permit preliminary negotiations to promote that purpose, the City has made no showing that a quantifiable economic loss will result from the brief delay occasioned by the preliminary injunction. Indeed, this court has directed a briefing and discovery schedule that will result in a prompt trial on the merits.

### V. Other Arguments

 I will address briefly four issues raised in the defendants' memorandum of law. First, the defendants argue that because the debtor asserted at an August 3, 1993 hearing that the Settlement was in the best interest of the estate, the plaintiffs are judicially estopped from now asserting that the Settlement is not in the estate's interest and is not valid and enforceable. Therefore,

the argument goes, this court should now approve the Settlement which would have the effect of retroactively depriving the plaintiffs of any rights they have under the Agreement. That argument lacks merit. The doctrine of judicial estoppel applies only where a party succeeds in having a court adopt its prior inconsistent position. *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990). No order approving the Settlement has yet entered, so the plaintiffs have not been successful nor has the court relied on or adopted the debtor's in-court assertions. Further, the heart of the plaintiffs' claims is that the defendants interfered with the plaintiffs' ability to perform the Settlement. Even if the Settlement was in the estate's best interest if fully performed by all parties, the plaintiffs cannot be estopped from arguing that the defendants' conduct subsequent to entering into the Settlement has breached that agreement and that the defendants may not now be permitted to claim the benefit of the Settlement to the plaintiffs' further detriment.

Second, the defendants argue that the Agreement has already been terminated due to prepetition defaults by Ocean Mile, but that is one of the ultimate issues to be determined in this litigation. Ocean Mile instituted actions seeking relief from the City's purported termination. The Settlement was negotiated to resolve that controversy and revitalize the underlying Agreement. If the defendants have prevented the plaintiffs from performing the Settlement, they may not now argue that their purported prepetition termination must be given effect by this court.[4]

---

4. The Settlement provides on page 8: "Neither party will commence litigation and/or arbitration against the other in the event that the City determines that [Ocean Mile] has not produced the required firm and binding financing commitment." The defendants have not argued that that provision precludes the instant adversary proceeding. The provision appears to reflect the fact that the City had the discretion, to be reason-

ably exercised, to determine if the financing commitment Ocean Mile obtained was acceptable. *See* Settlement, p. 5. The provision cannot be construed to preclude Ocean Mile from enforcing its rights under the Settlement if the City breached that agreement, as that would render the agreement illusory. Further, as noted, the debtor was not a party to the Settlement.

■ Third, the defendants assert that the doctrine of sovereign immunity precludes the granting of monetary relief against the municipality of Asbury Park. Without deciding whether the City is entitled to claim such immunity, I note that that issue is irrelevant to the question of whether this court may enter a preliminary injunction. Indeed, § 106 "waives state sovereign immunity ... to the extent necessary for the bankruptcy court to determine a state's rights in the debtor's estate." *Hoffman v. State of Connecticut, Dept. of Revenue Servs. (In re Wellington Convalescent Home, Inc.)*, 850 F.2d 50, 55 (2d Cir.1988), *aff'd*, 492 U.S. 96, 102, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989) ("The language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery"); *see Lopresto v. Dep't of Revenue, State of Florida (In re Iorizzo)*, 114 B.R. 19, 23 (E.D.N.Y.1990) (state agency was not immune from an injunction action); *Arminio v. Comm'r of Motor Vehicles (In re Arminio)*, 38 B.R. 472, 479–81 (Bankr.D.Conn.1984) (Eleventh Amendment precluded awarding of retrospective compensatory damages against state). That is precisely the focus of the instant proceeding.

■ Fourth, the defendants suggest that this court abstain.[5] Mandatory abstention is inapplicable to this core proceeding for a preliminary injunction. *Weinberg v. Boyle (In re Weinberg)*, 153 B.R. 286, 292 (Bankr. D.S.D.1993). Mandatory abstention under 28 U.S.C. § 1334(c)(2) is not appropriate for the underlying action because the thrust of the defendants' request in that regard is that the action pending in the state court can be quickly adjudicated, and the arguments of counsel persuade me that that is not the case. Moreover, the issue of the breach of the Settlement is not pending in the state court. As noted, the court will consider the propriety of discretionary abstention at a later time. *See Southmark Prime Plus, L.P. v. Southmark Storage Assocs. Ltd. Partnership (In re Southmark Storage Assocs. Limited Partnership)*, 132 B.R. 231 (Bankr. D.Conn.1991); *Marcus Dairy, Inc. v. Belford*

*(In re Naugatuck Dairy Ice Cream Co., Inc.)*, 106 B.R. 24 (Bankr.D.Conn.1989).

## ORDER

Until the further order of this court or the order of the United States District Court for this District, in the event that that court grants the defendants' motion for a withdrawal of reference of this proceeding,

IT IS HEREBY ORDERED That the plaintiff Ocean Mile Development Group is not required to post a bond as security under Rule 7065(c).

IT IS FURTHER ORDERED That the defendants, their agents, servants, employees, and attorneys and the escrow agents and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained from:

a. adopting a resolution and/or otherwise declaring a default under and/or terminating the following documents, or any one of them:

(i) Redeveloper Agreement and Land Disposition Agreement between Carabetta/Vaccaro Developers, now known as Ocean Mile Development Group, a New Jersey limited partnership ("Ocean Mile"), and the City of Asbury Park, N.J. (the "City"), dated on or about April 2, 1986 (the "Agreement");

(ii) lease agreement between Ocean Mile and the City, dated on or about April 8, 1987 (the "Lease");

(iii) Modification of the Agreement dated on or about May 21, 1991 (the "Modification");

(iv) Settlement Agreement between Ocean Mile and the City dated June 28, 1993 (the "Settlement");

(v) Escrow Agreement between Charles J. Uliano, Esq., as Escrowee, Ocean Mile and the City dated June 30, 1993 (the "Escrow Agreement");

(vi) escrow letter from Anne S. Babineau, Esq., of Wilentz, Goldman & Spitzer, to Dominic J. Aprile, Esq., of Bathgate,

---

5. The City filed a formal motion requesting dismissal of or abstention from this proceeding on December 16, 1993. That motion has not yet been heard by the court.

Wegener, Dugan & Wolf, dated June 30, 1993 (the "Escrow Letter").

b. engaging in any action and/or exercising any rights or remedies under the Agreement, Lease, Modification, Settlement, Escrow Agreement, Escrow Letter, or any of them; and

c. taking any action to cause the documents being held in escrow in conjunction with the Settlement, Escrow Agreement and/or Escrow Letter, to be released from escrow.

IT IS FURTHER ORDERED That notwithstanding anything to the contrary contained in this Order or the Agreement, the Modification, or the Settlement, this Order does **not** restrain the defendants, or any of them, from entering into preliminary negotiations with potential developers, for the purpose of entering into contracts for the development of all or any part of the City's Waterfront Redevelopment Area, but **does** restrain the defendants, or any of them, from entering into any binding contracts or commitments with such potential developers.