In re Paul A. BERNIER, Debtor.

Richard M. COAN, Trustee, Plaintiff,

and

United States of America,
Plaintiff–Intervenor,

v.

Linda A. BERNIER, Defendant.

Bankruptcy No. 90–52302.
Adv. No. 91–5258.

United States Bankruptcy Court,
D. Connecticut.

Jan. 13, 1995.

Timothy D. Miltenberger, Coan, Lewendon and Royston, New Haven, CT, for plaintiff.

Deirdre A. Martini, Asst. U.S. Atty., Bridgeport, CT, Karen I. Meyer, J. Christopher Kohn, Tracy J. Whitaker, Shereen J. Charlick, Civ. Div., Dept. of Justice, Washington, DC, for U.S.

Carl T. Holt, Westport, CT, for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO SELL REAL PROPERTY FREE AND CLEAR OF THE INTEREST OF CO-OWNER

ALAN H.W. SHIFF, Bankruptcy Judge.

The defendant challenges the constitutionality of § 363(h) and (j) of the Bankruptcy Code. For the reasons that follow, I conclude that those subsections are constitutional.

### BACKGROUND

The plaintiff is the chapter 7 trustee in this case and commenced this adversary proceeding against the defendant, the debtor's wife, seeking to sell both her and the debtor's interest in their residence located in New Canaan, Connecticut pursuant to § 363(h). *See infra,* p. 980. The defendant acquired an undivided one-half interest as joint tenant[1] with the debtor by an October 18, 1982 conveyance from him. *See* Plaintiff's Exhibit A.

The defendant's answer admitted every essential allegation of the complaint except that "[t]he benefit to the estate of a sale of the Property free of the interest of the defendant outweighs the detriment if any, to the defendant." *See* Complaint at ¶ 7.c.; § 363(h)(3). Although the answer raised no affirmative defense that § 363(h) was unconstitutional, the defendant made that assertion in a pre-

trial memorandum filed April 10, 1992. On April 16, 1992, the defendant filed a motion for leave to file an amended answer, asserting as affirmative defenses that §§ 363(h) and (j) are unconstitutional under Article I, Section 8, clause 4 of the Constitution and the Fifth Amendment to the Constitution. *See* Rule 7015, Fed.R.Bankr.P. The plaintiff did not object to the inclusion of the affirmative defenses, and an order granting the motion entered on May 6, 1992. The facts relevant to those affirmative defenses are not in dispute. *See* Stipulation of Facts filed January 7, 1994. The constitutional issues raised by those defenses, which are the subject of this memorandum and order, were bifurcated from the trial on the issues under § 363(h)(3), which was held on April 16, 1992 and is discussed briefly *infra* at pp. 980–81.

Because this proceeding draws into question the constitutionality of an Act of Congress affecting the public interest, the Attorney General of the United States was notified pursuant to 28 U.S.C.A. § 2403(a) (West 1994), as implemented by Rule 16, Local Rules of Bankruptcy Procedure for this court.[2] The United States exercised its right to intervene under that statute, *see* Rule 24(a)(1), Fed.R.Civ.P., made applicable by Rule 7024, Fed.R.Bankr.P. (court must permit intervention when statute of United

---

1. The parties' Stipulation of Facts filed January 7, 1994 states that the court found on April 16, 1992 that the estate owns a one-half interest as tenant in common with the defendant. The deed of conveyance dated October 18, 1982, *see* Plaintiff's Exhibit A, employs language which would create a joint tenancy with express right of survivorship under Connecticut law. *See* Conn.Gen. Stat.Ann. § 47–14a (West 1986). The only fact essential to the present proceeding is that the defendant and the debtor owned the residence as joint tenants prior to the debtor's chapter 7 filing. I express no opinion as to whether that filing severed the joint tenancy. *Compare Durnal v. Borg–Warner Acceptance Corp. (In re DeMarco),* 114 B.R. 121 (Bankr.N.D.W.Va.1990) (chapter 7 filing does not sever joint tenancy) with *In re Lambert,* 34 B.R. 41 (Bankr.D.Colo.1983) (contra); *cf. also Matter of Cameron,* 164 B.R. 428, 430 (Bankr.D.Conn.1994) (chapter 13 filing does not sever joint tenancy).

2. I acknowledge that § 2403(a) applies to proceedings in a "court of the United States," which term includes the district courts but not explicitly the bankruptcy courts. *See* 28 U.S.C.A. § 451

(West 1993). As I have discussed at greater length elsewhere, *see In re Melendez,* 153 B.R. 386 (Bankr.D.Conn.1993), the deletion of the bankruptcy courts from the definition of "court of the United States" was an apparent response to the designation of bankruptcy judges by the Bankruptcy Amendments and Federal Judgeship Act of 1984 as "a unit of the district court to be known as the bankruptcy court for that district." *See* 28 U.S.C.A. § 151 (West 1993). A proceeding challenging the constitutionality of a statute which is pending in this court is therefore pending in the district court within the meaning of § 2403(a). Of course, the Attorney General is just as likely to defend the constitutionality of a statute when it is challenged in this court as when it is challenged in the district court. I note that the parties here agreed that notification under § 2403(a) was appropriate and that that statute in no way impacts upon this court's jurisdiction to hear the instant proceeding. *See* Defendant's Memorandum, filed May 11, 1992, at pp. 2–5; Plaintiff's Memorandum, filed May 18, 1992, at pp. 2–4.

States confers an unconditional right to do so), and has filed a memorandum of law and presented oral argument.

## DISCUSSION

This adversary proceeding "arises under title 11" and is therefore a core proceeding as to which this court may enter a dispositive order. 28 U.S.C.A. §§ 157(b)(1), (b)(2)(N), (O); 1334(b) (West 1993); *Whittington v. Gilbralter Sav. & Loan Ass'n (In re Spain)*, 103 B.R. 286, 293 (N.D.Ala.1988).[3]

Section 363(h), (i) and (j) provide in pertinent part:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; [and]

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners....

(i) Before the consummation of a sale of property to which subsection ... (h) of this section applies ... the debtor's spouse ... may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection ... (h) of this section applies, the trustee shall distribute to the debtor's spouse ... and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse ... and of the estate.

Article I, Section 8, clause 4 of the United States Constitution provides in relevant part:

The Congress shall have the Power ... [t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States (the "Bankruptcy Clause").

The Fifth Amendment to the United States Constitution provides in relevant part:

... nor shall private property be taken for public use, without just compensation (the "Takings Clause").

Section 363(h), (i), and (j) were enacted as part of the Bankruptcy Reform Act of 1978, effective October 1, 1979.[4] Thus, those subsections were in effect at the time the defendant acquired her interest in the residence.

## I.

### BALANCING UNDER § 363(h)(3)

As noted, the balancing test under § 363(h)(3) was the subject of an earlier proceeding, which was decided on the record in the plaintiff's favor. I include a reference to that issue here so that the procedural context of the constitutional issue will be clarified.[5]

■ An analysis under § 363(h)(3) requires the consideration of both economic factors, such as the valuation of the non-debtor spouse's interest, available tax exemptions, etc., and non-economic factors, including the prospects for acquiring a new home, handicaps, and the existence of minor children. *See Community Nat'l Bank and Trust Co. of New York v. Persky (In re Persky)*, 893 F.2d 15, 21 (2d Cir.1989). *See*

---

3. The defendant's answer admitted that this was a core proceeding. At trial, the defendant requested leave to amend the answer to allege that this was a related proceeding. Because a consensual pleading bar date had expired, and because the amendment was in any event without merit, that request was denied. Moreover, the defendant consented to the resolution of all issues by this court pursuant to 28 U.S.C.A. § 157(c)(2) (West 1993).

4. Certain nonmaterial amendments were made to § 363(h) and (j) in 1984.

5. "[F]ederal courts will not pass on the constitutionality of an Act of Congress if a construction of the Act is fairly possible by which the constitutional question can be avoided." *Zobrest v. Catalina Foothills Sch. Dist.*, — U.S. —, —, 113 S.Ct. 2462, 2465, 125 L.Ed.2d 1 (1993).

*Price v. Harris (In re Harris)*, 155 B.R. 948, 950–51 (Bankr.E.D.Va.1993); *Polliard v. Polliard (In re Polliard)*, 152 B.R. 51, 56 (Bankr.W.D.Pa.1993); *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 807 (Bankr.D.Mass.1987) (sale authorized under § 363(h) where [as here] that was the only source of funds for the estate, notwithstanding substantial hardship to spouse and children).

■ The essentially uncontroverted evidence adduced at the April 16, 1992, trial demonstrated that the value of the residence was between $260,000 and $280,000. Using the $260,000 figure, the net sale proceeds would be approximately $192,800, of which $96,400 would go to each co-owner.[6] Taking into account tax consequences of approximately $21,000 to each interest, the net proceeds would be approximately $75,000 to the defendant and the estate. As to the detriment to the defendant, the substantial equity in the property, together with the defendant's income as disclosed at trial, would give her an adequate option of obtaining alternative housing or financing so that she could exercise her right of first refusal under § 363(i). While the defendant testified as to some degree of emotional stress, there was no evidence that that stress was entirely or even substantially due to the possibility of moving, and not due to other factors. There was no evidence of undue hardship to the defendant's one child. In sharp contrast, the trustee would have no funds for distribution

without a sale of the property under § 363(h). It is therefore apparent that the benefit to the estate outweighs the alleged detriment to the defendant. Accordingly, the § 363(h)(3) test has been satisfied.

## II.

### *CONSTITUTIONALITY OF § 363(h)*

The issue addressed here is whether the trustee's sale of the defendant's interest in the residence under § 363(h), (i) and (j) would exceed the scope of the Bankruptcy Clause, or would constitute a taking of private property prohibited by the Fifth Amendment to the United States Constitution, even assuming that § 363(j) provides for the payment of "just compensation" within the meaning of the Fifth Amendment.[7]

■ Acts of Congress are presumed to be constitutional, so the defendant bears the burden of proving her claim that § 363(h) is constitutionally flawed. *Heller v. Doe By Doe*, — U.S. —, —, 113 S.Ct. 2637, 2643 (1993); *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984). "The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *United States v. Security Indus. Bank*, 459 U.S. 70, 75, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). Therefore, in order to determine whether § 363(h) is constitutional in the context of this proceeding,[8] it must first be

---

**6.** The parties agreed that the estate and the defendant would divide the net sale proceeds equally. Differing tax consequences and the fact that the trustee's fee would be chargeable to the estate's interest were taken into consideration. The fact that the defendant offered to purchase the estate's interest for about $50,000 in net proceeds to the estate did not alter my conclusion.

**7.** In an April 10, 1992 memorandum, filed *before* the defendant sought or obtained leave to amend her complaint to assert her claims of unconstitutionality, the defendant made an oblique challenge in a footnote to the constitutionality of § 363(j) because it would require the non-debtor co-owner to pay her portion of the costs of sale. *See* Memorandum, p. 4 n. 2. That suggestion was repeated in a December 15, 1993 memorandum. No explanation was offered as to why that requirement was unconstitutional, in view of the

fact that even in a voluntary sale, the co-owner's share of the proceeds would be reduced by necessary costs of sale. In any event, the defendant expressly abandoned that argument at the hearing on this matter on June 7, 1994. Accordingly, the constitutionality of § 363(i) and (j) are not at issue here. Those subsections are considered, however, to the extent that they provide a right of first refusal and compensation which are linked to § 363(h) and ameliorate the effects of that statute.

**8.** The defendant asserts an "as applied," not a "facial," challenge to § 363(h). A facial challenge would require a showing that the statute could under no circumstance operate in a constitutional manner. *See Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 595 (2d Cir.1993). Further, "the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision neces-

determined whether the Bankruptcy Clause authorizes that statute. If it does, it must then be determined whether the Takings Clause prohibits the application of § 363(h) in this case. The answer to each of those questions to a large extent depends upon what property rights the defendant has in the residence under applicable Connecticut law. Put another way, the defendant's attempt to prevent the trustee from selling her interest in the residence depends upon whether that interest is protected by Connecticut law. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *accord Nobelman v. Am. Sav. Bank,* — U.S. —, —, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993).

## A.

### JOINT TENANCIES UNDER CONNECTICUT LAW

■ Connecticut law does not recognize a tenancy by the entirety, and the legal effect of a conveyance to a husband and wife is the same as though the grantees were unrelated. *New Haven Trolley and Bus Employees Credit Union v. Hill,* 145 Conn. 332, 334, 142 A.2d 730 (1958); *Whittlesey v. Fuller,* 11 Conn. 337, 340–41 (1836). Unlike a tenant by the entirety, a single joint tenant may convey his interest and the grantee thereupon holds as a tenant in common with the remaining cotenants. Conn.Gen.Stat. Ann. § 47–14c (West 1986); *Liscio v. Liscio,* 204 Conn. 502, 505–06, 528 A.2d 1143 (1987). The right of survivorship has been repudiated as a necessary incident of a joint tenancy, but may nevertheless be created by express language in the deed of conveyance. *Hughes v. Fairfield Lumber and Supply Co.,* 143 Conn. 427, 430, 123 A.2d 195 (1956); Conn. Gen.Stat.Ann. § 47–14a (West 1986); *see Whittlesey v. Fuller, supra,* 11 Conn. at 339

("[T]he odious and unjust doctrine of survivorship was never adopted in this state.... Indeed, there is, in our state, no essential difference between the rights of joint tenants, and tenants in common."). Under Connecticut law, "each cotenant holds an undivided partial moiety or interest in the *whole* of their property.... A consequence of this form of ownership is that a cotenant can freely sell, lease or mortgage his own undivided interest in the whole of the property to a third party without the consent of the remaining cotenants. A cotenant may not, however, act unilaterally so as to bind the interest of his cotenant." *Ianotti v. Ciccio,* 219 Conn. 36, 41, 591 A.2d 797 (1991) (citations omitted). Further, "a cotenant has a right, on partition, to a share of the common estate, [but] has no right to demand any *particular* part thereof." *Id.,* 219 Conn. at 43, 591 A.2d 797.

■ The interest of a joint tenant may be attached and taken on execution. Conn.Gen.Stat.Ann. § 47–14f (West 1986); *New Haven Trolley and Bus Employees Credit Union, supra,* 145 Conn. at 335, 142 A.2d 730. An attachment against the interest of a single joint tenant continues to be enforceable after the death of that joint tenant. Conn.Gen.Stat.Ann. § 47–14f (West 1986). A sale upon execution severs the joint tenancy and the purchaser at the execution sale becomes a tenant in common with the remaining tenants. Conn.Gen.Stat.Ann. § 47–14c (West 1986); *New Haven Trolley and Bus Employees Credit Union, supra,* 145 Conn. at 335, 142 A.2d 730.

■ Conn.Gen.Stat.Ann. § 52–500(a) (West 1991) provides: "Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners." Partitions in kind are favored over partitions by sale. *Delfino v. Vealencis,* 181 Conn. 533, 536, 436 A.2d 27 (1980). However, "[d]ue to the possible im-

---

sary." *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.,* 452 U.S. 264, 294–95, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981).

practicality of actual division," Connecticut adopted a statute permitting partition by sale in 1844. *Id.*, 181 Conn. at 537, 436 A.2d 27. "[A] partition by sale should be ordered only when ... (1) the physical attributes of the land are such that a partition in kind is impracticable or inequitable; and (2) the interests of the owners would better be promoted by a partition by sale." *Id.*, 181 Conn. at 537–38, 436 A.2d 27 (citation omitted). The party requesting partition by sale has the burden of proving that a sale would better promote the owners' interests. *Id.*, 181 Conn. at 538, 436 A.2d 27.

The Connecticut Supreme Court long ago upheld the predecessor to § 52–500(a) against a constitutional challenge. *Richardson v. Monson*, 23 Conn. 94 (1854). There, the statute was challenged on the ground that it authorized the superior court "upon the application of one or more tenants in common, and representing, as in this case, a small minority of interest, to compel the sale of the rights of all others, depriving them, *in invitum*, of their property, merely to accommodate others, and without reference to the public interests." *Id.* at 97. The Connecticut Supreme Court responded:

> The statute in question does not profess to deprive any one of any interest in his property, but only to afford a reasonable remedy for its enjoyment, by partition.
>
> The right of partition is incident to all real estate holden in common, whether corporeal or incorporeal, and especially whenever it can not be otherwise enjoyed. The right of beneficial enjoyment of property is as essential as the right of ownership. And, indeed, by the principles of the common law, recognized by stat. 31 and 32, Hen. VIII., *this right of partition enters into the very nature of the title of estates holden in common, and is inseparable from them....*
>
> The statute giving the power of sale introduces, as we think, no new principle; it provides only for an emergency, when a

division cannot be well made, in any other way.

*Id.* (emphasis added). The court also determined that the statute was remedial and held that it could constitutionally be applied even to titles in existence on the effective date of the statute. *Id.* at 98. *See also Head v. Amoskeag Mfg. Co.*, 113 U.S. 9, 21, 5 S.Ct. 441, 446, 28 L.Ed. 889 (1885) (where a joint tenant seeks a partition, state courts "under statutes the constitutionality of which has never been denied, will, if the estate is such that it cannot be divided, either set it off to one and order him to compensate the others in money, or else order the whole estate to be sold.").

▮ Even an express right of survivorship may be terminated by an action for partition and sale without the consent of the joint tenant against whom partition is sought. *Geib v. McKinney*, 224 Conn. 219, 225, 617 A.2d 1377 (1992); *see* Conn.Gen.Stat.Ann. § 47–14h (West 1986). Connecticut does not follow the minority rule that a right of survivorship creates an indestructible contingent remainder. *Id.*

> The right to partition has long been regarded an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. "No person can be compelled to remain the owner with another of real estate, not even if he become such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afforded to every owner with another relief by way of partition...." *Johnson v. Olmsted*, 49 Conn. 509, 517 (1882).... That the partition in this case was by sale rather than by kind does not render the right to partition less available to the plaintiff.

*Id.*, 224 Conn. at 224 & n. 5, 617 A.2d 1377 (1992).[9] That characteristic of a Connecticut

---

9. The fact that a joint tenant's right of survivorship is destructible negates any argument that that property interest is not "undivided" within the meaning of § 363(h). *Cf. Community Nat'l Bank and Trust Co. of New York v. Persky (In re*

*Persky)*, 134 B.R. 81, 88 (Bankr.E.D.N.Y.1991) ("[I]nterests in ... joint tenancy ... clearly represent[ ] undivided interests...."). Neither party suggests a contrary result under Connecticut law. That conclusion applies irrespective of

joint tenancy distinguishes it from a tenancy by the entirety recognized in New York.

> This distinction leads to one of the more important differences between joint tenancy and tenancy by the entireties at common law: the interest of one joint tenant was freely alienable although transfer of a simple interest would sever[ ] the joint tenancy and transform it to a tenancy in common, while a tenant by the entirety could not unilaterally sever the tenancy or defeat the right of survivorship.

*Community Nat'l Bank and Trust Co. of New York v. Persky (In re Persky)*, 134 B.R. 81, 85–86 (Bankr.E.D.N.Y.1991) (citation omitted).[10] Accordingly, the defendant's reliance upon *Persky* is misplaced.

■ In sum, the right of partition, including, in appropriate circumstances, partition by sale, inheres in the very title to real property in Connecticut. Every person acquiring a cotenancy in Connecticut since at least 1844 has acquired it subject to the right of a cotenant's creditors to attach and obtain title to the cotenant's interest and seek partition by sale of the entire property. It therefore follows that the defendant's property rights in the residence under Connecticut law do not protect her from forced sale of her interest. Indeed, given that the right to partition in Connecticut is absolute and the defendant's admission that partition in kind is impracticable, if the trustee should sell the debtor's undivided interest, a partition by sale is not only a possible but practically an inevitable result should the purchaser seek it

under state law.[11] The question evolves: is bankruptcy law, which permits a trustee to achieve the same result, unconstitutional as the defendant claims. In that regard, it is observed that the district court, of which this court is a unit, *see* 28 U.S.C.A. § 151 (West 1993), has exclusive jurisdiction over all property of the bankruptcy estate, *see* 28 U.S.C. § 1334(e) (1994), so that a state court may not order the partition or sale of that property.[12]

## B.

### SCOPE OF THE BANKRUPTCY CLAUSE

The thrust of the defendant's Bankruptcy Clause challenge is that bankruptcy laws may not affect the property rights of non-creditor third parties. Her argument appears to rely on Supreme Court precedent which defines the reach of bankruptcy power. Her reliance is misplaced because those decisions cannot even by implication be read to protect non-creditor third party property rights from the collection-distribution scheme at the core of the bankruptcy process where those rights are inextricably intertwined with those of a bankruptcy estate.

The Supreme Court has characterized the Bankruptcy Clause as expansive.

> From the beginning, the tendency of legislation and of judicial interpretation has been uniformly in the direction of progressive liberalization in respect of the operation of the bankruptcy power. . . . And

---

whether the chapter 7 filing itself severs the joint tenancy, because the eventual sale of the estate's interest in the property will indubitably effect such a severance.

**10.** States which recognize tenancies by the entirety do so on the basis of the legal fiction that spouses constitute a single legal entity. *Id.* at 85. Carrying that fiction to its logical conclusion would obviate the need for § 363(h) as to entireties property, because both spouses would have to join in the bankruptcy petition in order to render the single legal entity a debtor in bankruptcy.

**11.** *Cf. Johnson v. Olmsted*, 49 Conn. 509, 517–18 (1882); *Borzencki v. Estate of Stakum*, 195 Conn. 368, 381, 489 A.2d 341 (1985) (under probate partition statute, which is similar to Conn.Gen.

Stat. § 52–500(a), impracticality of division is closely intertwined with best interests of parties, as there is no right to partition in kind unless it can be made consistent with best interests of all the parties).

**12.** Although arguably § 544(a) permits the trustee to use Conn.Gen.Stat. § 52–500(a) to partition the residence in this court, *Butner* holds that state law defines property rights in the absence of a countervailing federal interest. But because § 363(h), (i), and (j) reflect a federal policy in favor of protecting the rights of non-debtor co-owners through the balancing test, right of first refusal, and compensation requirement, those rights must be preserved even if they do not exist under applicable non-bankruptcy law, so that it would not be appropriate for the trustee to use § 52–500(a).

these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed.

*Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co.,* 294 U.S. 648, 668, 671, 55 S.Ct. 595, 603, 604, 79 L.Ed. 1110 (1935). As noted by Justice Cardozo,

> The history [of the bankruptcy power] is one of an expanding concept. It is, however, an expanding concept that has had to fight its way. Almost every change has been hotly denounced in its beginnings as a usurpation of power. Only time or judicial decision has had capacity to silence opposition.

*Ashton v. Cameron County Water Improvement Dist. No. 1,* 298 U.S. 513, 535, 56 S.Ct. 892, 898, 80 L.Ed. 1309 (1936) (Cardozo, J., dissenting) (citations omitted).

> Under the Bankruptcy Clause, Congress may embrace within its legislation whatever may be deemed important to a complete and effective bankrupt system. The object of such a system is to secure a ratable distribution of the bankrupt's estate among his creditors ... and at the same time relieve the honest debtor from legal proceedings for his debts, upon a surrender of his property.

*United States v. Fox,* 95 U.S. 670, 672, 24 L.Ed. 538 (1877). Distribution of estate assets to creditors is a core function of bankruptcy.

> Although we have noted that "[t]he subject of bankruptcies is incapable of final definition," we have previously defined "bankruptcy" as the "subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief." *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 513–14, 58 S.Ct. 1025, 1031–32, 82 L.Ed. 1490 (1938). *See Continental Illinois National Bank & Trust Co. v. Chicago, R.I. & P.R. Co.,* 294 U.S. 648, 673, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935).... It "includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property. The grant to Con-

gress involves the power to impair the obligation of contracts, and this the States were forbidden to do." [*Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902).]

*Ry. Labor Executives Ass'n v. Gibbons,* 455 U.S. 457, 466, 102 S.Ct. 1169, 1175, 71 L.Ed.2d 335 (1982) (a statute which provided for the distribution of a railroad's property among its creditors was an exercise of the bankruptcy, not commerce, power).

> The oft-quoted definitions of the bankruptcy power indicate its broad scope.... "[The bankruptcy power] extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest, is a discharge of the debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress."

*Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 588 n. 18, 55 S.Ct. 854, 863 n. 18, 79 L.Ed. 1593 (1935) (quoting *Re Klein,* reported in a note to *Nelson v. Carland,* 42 U.S. 265, 281, 1 How. 265, 277, 11 L.Ed. 126, 131 (1843)). "[T]he object of bankruptcy laws is the equitable distribution of the debtor's assets amongst his creditors; and the validity of the challenged provision must be tested by its appropriateness to that end." *Kuehner v. Irving Trust Co.,* 299 U.S. 445, 451, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1937) (footnote omitted).

■ Those decisions unequivocally state that the bankruptcy power authorizes laws relating to the distribution of the debtor's property. Section 363(h) is, just as unequivocally, such a law. Indeed, its primary purpose is to facilitate the bankruptcy goal of effective distribution of the property of the bankruptcy estate by the trustee.

> The bill makes significant changes in what constitutes property of the estate. Current law is a complicated melange of references to State law, and does little to further the bankruptcy policy of distribution of the debtor's property to his creditor in

satisfaction of his debts.... These changes will bring anything of value that the debtors have into the estate.... [O]n the whole, the trustee will be able to bring all property together for a coherent evaluation of its value and transferability, and then to dispose of it for the benefit of the debtor's creditors.

H.R.Rep. No. 595, 95th Congress, 2d Session 175–76 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6136–37 (footnotes omitted).

Contrary to the defendant's argument, the Supreme Court has recognized that collection and distribution of the estate property may affect the rights of non-creditor third parties who share an interest with the estate. In *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938), the Court upheld the constitutionality of a statute which extended the right of redemption on foreclosed property, thus· affecting the property rights of the foreclosure sale purchaser.

[R]espondent urges that under the Bankruptcy Clause Congress is confined to legislation for the adjustment of the debtor-creditor relationship, and insists that the purchaser at an Indiana judicial sale is not a creditor but a grantee with rights acquired by the purchase.... While there may be no relation of debtor and creditor between the bankrupt and the purchaser of his property at judicial sale, we think the purchaser at a judicial sale does enter into the radius of the bankruptcy power over debts.

*Id.* at 514, 58 S.Ct. at 1032. Just as the judicial sale purchaser in *Wright* was subject to the bankruptcy power because of the possibility of redemption under state law, so the defendant, by virtue of her co-ownership, has entered within the radius of the bankruptcy power. The defendant's property rights are therefore directly in the path of the bankruptcy trustee's statutory duty to maximize the property of the bankruptcy estate for distribution to the holders of allowed claims.

The trustee's powers under § 363(h) are all the more compelling here because the defendant is the debtor's spouse and thus an "insider" under § 101(31) of the Code. "An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." H.R.Rep. No. 595, 95th Congress, 2d Session 312 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6269. An insider is one who may have an identity of interest with the debtor. That relationship brings the defendant even more squarely within the scope of the bankruptcy power.

The conclusion that § 363(h), which necessarily affects non-creditor third party interests, is within the scope of the Bankruptcy Clause, is bolstered by the fact that other sections of the code have a similar effect. For example, the trustee may recover a fraudulent transfer under § 548 against a non-creditor transferee who has no commercial relationship with the debtor. Section 723 permits the trustee in a partnership case to satisfy a deficiency from assets of non-creditor general partners who are co-liable on the estate debts. The policy served by those sections is the same as that served by § 363(h), to wit: maximization of estate property. Further, it has long been recognized that non-creditor third parties may be enjoined from interfering with the reorganization efforts of debtors. *See* § 105(a); *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co., supra,* 294 U.S. at 675, 55 S.Ct. at 606 ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is ... inherent in a court of bankruptcy, as it is in a duly established court of equity."); *MacArthur Co. v. Johns–Manville Corp. (In re Johns Manville Corp.),* 837 F.2d 89, 93 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Carabetta Enters., Inc. v. City of Asbury Park (In re Carabetta Enters., Inc.),* 162 B.R. 399, 405–06 (Bankr.D.Conn.1993).[13] The purpose

---

13. It is noted that in the recently enacted Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, § 111, Congress recognized the bankruptcy court's authority to issue "channel-ing injunctions" in asbestos cases which preclude actions against third parties which would have the effect of circumventing the terms of a distribution trust.

of § 363(h) is similar. In its absence, the jurisdiction of the bankruptcy court over the estate's interest in co-owned property would be defeated or impaired.[14]

The scope of the powers granted under the Bankruptcy Clause is not without limit. Supreme Court precedent, however, has generally defined those limits in terms of other constitutional requirements, rather than in terms of inherent limitations to the bankruptcy power. For example, in *Ashton v. Cameron County Water Improvement Dist. No. 1, supra,* 298 U.S. at 527, 530, 56 S.Ct. at 894, 896, the Court struck down a bankruptcy statute authorizing the political subdivisions of states to seek readjustments of their debts, even though the Court assumed that the statute related to the general "subject of bankruptcies" within the literal wording of the Bankruptcy Clause.[15] The Court did so based on the concept of state sovereignty and freedom of the state from undue interference from the federal government. *Cf. Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 105, 109 S.Ct. 2818, 2824, 106 L.Ed.2d 76 (1989) (Scalia, J., concurring) (Congress' Article I powers do not extend to the abrogation of Eleventh Amendment immunity). The Court has also invalidated provisions of the Bankruptcy Code which infringe on the Article III powers of the courts, *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), or which violate the uniformity requirement contained in the express language of the Bankruptcy Clause, *Ry. Labor Executives' Ass'n v. Gibbons, supra,* 455 U.S. 457, 102 S.Ct. 1169.

Typically, challenges to bankruptcy legislation on the basis that it impermissibly interferes with property rights have been based on the Takings Clause, rather than on any inherent limitation in the Bankruptcy Clause. For example, in *Louisville Joint Stock Land Bank v. Radford, supra,* 295 U.S. 555, 55 S.Ct. 854, the Court held that the Frazier–Lemke Act, which permitted a debtor to pay a secured creditor the appraised value of the property over time, or to remain on the property for five years if the secured creditor declined the purchase offer, was unconstitutional because it effected "the taking of substantive rights in specific property acquired by the bank prior to the act," not because it exceeded the scope of the bankruptcy power. *Id.* at 590, 55 S.Ct. at 863. *See also United States v. Security Indus. Bank, supra,* 459 U.S. at 74, 103 S.Ct. at 410 ("It may be readily agreed that § 522(f)(2) is a rational exercise of Congress' authority under [the Bankruptcy Clause]," even though that subsection would effect a taking if applied retroactively). "Property rights do not gain any absolute inviolability in the bankruptcy court because created and protected by state law.... [I]f Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect these property rights, provided the limitations of the due process clause are observed." *Wright v. Union Cent. Life Ins. Co., supra,* 304 U.S. at 518, 58 S.Ct. at 1034. "[A]s one of Congress' enumerated powers, the power to enact bankruptcy laws is limited only by the substantive guarantees contained in the Constitution." *Goerg v. Parungao (In re Goerg),* 844 F.2d 1562, 1565 (11th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989).

The defendant relies solely on *In re Persky, supra,* 134 B.R. at 94–99, for the proposition that § 363(h) exceeds the scope of the power granted under the Bankruptcy Clause. That holding was based largely on that

---

**14.** *See also Official Comm. of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines, Inc.),* 928 F.2d 565, 574 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991) (automatic stay precluded an entity related to the debtor from taking a worthless stock deduction where that would eliminate a valuable net operating loss of the debtor); *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) (automatic stay precluded landlord from terminating the prime lease of a non-debtor tenant where the legal effect of that termination would be to eradicate the sublease of the debtor subtenant).

**15.** To the extent *Ashton* could be said to define a limit to the Bankruptcy Clause, subsequent authority upholding governmental unit reorganization legislation must be read to have expanded that limit. *See, e.g., United States v. Bekins,* 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938).

court's conclusion that "bankruptcy legislation, by nature, regulates the debtor-creditor relationship." *Id.* at 97. Because the property interest involved there was a tenancy by the entirety, § 363(h) arguably afforded the trustee the power to affect the property of a non-creditor co-owner in a manner not authorized under state law. That is not the case here, where the trustee's rights under § 363(h) are no greater than those of any other judgment lien creditor. While § 363(h) could override contrary state law, *see BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994), as applied here, it does not. Indeed, "the Supreme Court in *Butner* recognized that often the uniformity desired is the uniform application of law between the bankruptcy court and the state in which it sits." *In re Maiorino,* 15 B.R. 254, 257 (Bankr. D.Conn.1981). The defendant's argument would have the anomalous result that creditors under Connecticut law would be able to reach the debtor's interest in co-owned property, while the trustee in bankruptcy serving as the representative of those creditors could not.

 The defendant also appears to argue that the Bankruptcy Clause requires uniform bankruptcy laws, and that the absence of a tenancy by the entirety under state law should not determine the applicability of § 363(h). *See* Defendant's Reply Memorandum, filed May 27, 1992, at pp. 7–8. Under the Bankruptcy Clause, bankruptcy laws enacted by Congress must be geographically uniform. *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 172, 67 S.Ct. 237, 245, 91 L.Ed. 162 (1946). However,

> Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the law of the state in certain particulars, although such recognition may lead to different results in different states.... Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the Act is not alike in all the states.

*Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918). *See also*

*Gibbons, supra,* 455 U.S. at 469, 102 S.Ct. at 1176 ("[U]niformity does not require the elimination of any differences among the States in their laws governing commercial transactions."); *Vanston, supra,* 329 U.S. at 172–73, 67 S.Ct. at 245 ("The Constitution did not intend that transactions that have different legal consequences because they took place in different States shall come out with the same result because they passed through a bankruptcy court."); *St. Angelo v. Victoria Farms, Inc.,* 38 F.3d 1525, 1531 (9th Cir. 1994). For example, the fact that Congress permits state law exemptions to be applicable in bankruptcy, with the result that a chapter 7 debtor in one state may retain substantially more property than one in another state, does not violate the uniformity requirement. *See Hanover Nat'l Bank of the City of New York v. Moyses,* 186 U.S. 181, 189–90, 22 S.Ct. 857, 861, 46 L.Ed. 1113 (1902); *In re Maiorino, supra,* 15 B.R. at 257. I accordingly conclude that § 363(h) does not exceed the scope of the Bankruptcy Clause.

### C.

### LIMITATIONS OF THE TAKINGS CLAUSE

 I further conclude that § 363(h) does not violate the Takings Clause as applied in the instant proceeding because (i) that statute does not deprive the defendant of any vested property right she has under Connecticut law; (ii) even if it did, any such taking would be for a public purpose and, under the presumption operative here, for just compensation; and (iii) Supreme Court precedent construing an Internal Revenue Code provision supports that conclusion.

#### 1. Is there a "taking"?

The defendant's argument that § 363(h) authorizes a taking, prohibited by the Fifth Amendment, is defeated because there is no proposed taking under the facts of this case.

 "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Dolan v. City of Tigard,* —— U.S. ——, ——,

114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). In *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), the Court held that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." In most instances where a regulation affects property rights, the Court has declined to adopt a set formula for determining when fairness and justice require that the government compensate for economic injuries caused by public action. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Instead, the Court "has examined the 'taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action—that have particular significance." *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). *Cf. Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986) (upholding ERISA withdrawal liability provisions where they did not effect a physical invasion or permanent appropriation for the government's own use, but were part of a "public program that adjusts the benefits and burdens of economic life to promote the common good").

The Supreme Court has identified two instances in which a so-called "categorical" taking occurs, eliminating the need for a *Penn Central* ad hoc inquiry. The first deals with permanent or temporary actual physical occupations or appropriations resulting from or authorized by government regulation, and is represented by *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). *Loretto* tested the constitutionality of a New York law which authorized a cable installer to install its equipment on apartment buildings in

return for a presumptively sufficient payment of $1. There, the Court held that "a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." 458 U.S. at 426, 102 S.Ct. at 3171. A taking occurred because the property owner had a "historically rooted expectation of compensation." *Id.* at 441, 102 S.Ct. at 3179. "A permanent physical occupation authorized by state law is a taking without regard to whether the State, or instead a party authorized by the State, is the occupant." *Loretto, supra,* at 433 n. 9, 102 S.Ct. at 3174 n. 9. The second type of categorical taking is "where regulation denies all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council*, 505 U.S. ——, ——, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). A regulation violates the Fifth Amendment where it "does not substantially advance legitimate state interests or denies an owner economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (citations omitted).[16] A temporary categorical taking also triggers a Fifth Amendment right to compensation under the rule of *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

Arguably the categorical takings analysis could apply in the instant case. If the plaintiff succeeds in this action, and the defendant does not exercise her right of first refusal, the residence will be sold and the purchaser will physically occupy it. But that analysis is superficial. The real issue is whether the defendant's property rights have been appropriated, and under Connecticut law, discussed *supra*, they have not, because those rights do not include the right to prevent her husband's creditors from selling the entire residence. Section 363(h) *affects* the defendant's rights by precipitating a sale; it does not appropriate or destroy them.

---

**16.** The defendant raises no due process challenge to § 363(h). For the reasons stated in this memorandum, however, I conclude that that statute serves "a legitimate legislative purpose furthered by rational means," *Pension Benefit Guar. Corp. v. R.A. Gray & Co., supra,* 467 U.S. at 729, 104 S.Ct. at 2717, and "substantially advance[s] legitimate state interests" under *Agins*.

■ In any event, whether considered under the categorical or the ad hoc analysis, there is no taking. The character of government action and economic effect factors of the *Penn Central* ad hoc analysis support that conclusion. First, § 363(h) does not result in a physical invasion or permanent appropriation for the government's own use. Rather, it "arises from a public program that adjusts the benefits and burdens of economic life to promote the common good." *Connolly v. Pension Benefit Guar. Corp., supra,* 475 U.S. at 225, 106 S.Ct. at 1026. Second, there is no apparent adverse economic impact on the non-debtor co-owner. Subsection 363(j) requires that the co-owner receive the proceeds of the sale according to his or her interest, less costs and expenses, *exclusive of trustee's fees.* Thus, the statute is careful not to burden the non-debtor co-owner with the trustee's compensation which is properly chargeable to the bankruptcy estate.

Under both the categorical and ad hoc analyses, interference with a "historically rooted expectation of compensation" or a "reasonable investment backed expectation" is the *sine qua non* of a taking. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) ("[W]e find that the force of this factor is so overwhelming ... that it disposes of the taking question ..."). Interests recognized as property interests under applicable state law are entitled to protection under the just compensation clause. *Kaiser Aetna v. United States, supra,* 444 U.S. at 179, 100 S.Ct. at 392. "[N]ot all economic interests are 'property rights'; only those economic advantages are 'rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." *United States v. Willow River Power Co.,* 324 U.S. 499, 502, 65 S.Ct. 761, 764, 89 L.Ed. 1101 (1945).

It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1580 (Fed.Cir. 1993) ("As part of a takings case, the plaintiff must show a legally-cognizable property interest. Not all losses generate a Fifth Amendment taking.... The Fifth Amendment protects property interests consisting of recognized expectations and mutual understandings.") (citations omitted).

The Supreme Court's categorical takings analysis in *Lucas v. South Carolina Coastal Council, supra,* 505 U.S. ——, 112 S.Ct. 2886, underscores the importance of state law in determining the existence of a taking.

Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests *were not part of his title to begin with.* This accords ... with our "takings" jurisprudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the "bundle of rights" that they acquire when they obtain title to property.... [A] regulation[] that prohibit[s] all economically beneficial use of land ... cannot be newly legislated or decreed (without compensation), *but must inhere in the title itself,* in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership. A law or decree with such an effect must ... *do no more than duplicate the result that could have been achieved in the courts* —by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance ... or otherwise.

*Id.* at ——, ——, 112 S.Ct. at 2899, 2900 (emphasis added) (footnote omitted).

The question thus evolves: does the defendant have a historically rooted, or a reasonable investment backed, expectation that her state law right to possession of the residence is superior to the right of the trustee, as the representative of her husband's creditors, *see* §§ 704(1), 726, to reach his interest by selling the entire residence and distributing the estate's share of the proceeds? Plainly, the answer is no, for two reasons: first, because the plaintiff's state law bundle of rights is limited, and second because the instant case does not involve a retroactive application of § 363(h).

■ On the first point, the Supreme Court has held that the right to exclude others is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States, supra*, 444 U.S. at 176, 100 S.Ct. at 391; *accord Dolan v. City of Tigard, supra*, —— U.S. at ——, 114 S.Ct. at 2316. But under Connecticut law, a joint tenant's right to exclude is subject to elimination by partition by sale. The plaintiff holds the debtor's right to seek partition by sale, a right which "enters into the very nature of the title of estates holden in common, and is inseparable from them...." *Richardson v. Monson, supra*, 23 Conn. at 97. Connecticut's partition by sale statute was enacted 138 years before the plaintiff acquired her joint tenancy; it was upheld as constitutional 128 years before that acquisition.[17] As noted, Connecticut law has never recognized a tenancy by the entirety. While Connecticut recently enacted a $75,000.00 homestead *exemption, see* Conn.Gen.Stat.Ann. § 52–352b (West Supp.1994), its law has never given a spouse a homestead *property interest* in a residence.

Viewed in the light of Connecticut law, the effect of § 363(h) is no different than the rights of a creditor to alienate the defendant's interest, except that § 363(h) gives her more protection. *See supra*, footnote 12.

That protection is hardly a basis to support the defendant's claim that § 363(h) is unconstitutional. A comparison of *Louisville Joint Stock Land Bank v. Radford, supra*, 295 U.S. 555, 55 S.Ct. 854, with *Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, Va.*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), further illustrates the point. In the former, the Court identified five elements to the property rights of a secured creditor. In the latter, the Court held that bankruptcy legislation which limited two of those rights, i.e., the right to determine when a sale of the collateral would be held and the right to control the property and receive the rents during the period of default, was not unconstitutional. Section 363(h) empowers the trustee to sell the defendant's interest in property before she might have chosen to do so. That acceleration does not effect a taking. *Cf. PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 84, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741 (1980) (shopping center owner's takings claim failed where owner could not demonstrate that right to exclude others was essential to use or value of property).

Further, § 363(h) was in effect before the defendant acquired her interest in the residence. In *Ruckelshaus v. Monsanto Co., supra*, 467 U.S. 986, 104 S.Ct. 2862, the Court held that a chemical producer could have no reasonable investment-backed expectation that its trade secrets would not be used and disclosed by the government after the date of enactment of a federal statute that provided for that use and disclosure. "If, despite the ... statute, Monsanto chose to submit the requisite data in order to receive a registration, it can hardly argue that its reasonable investment-backed expectations are disturbed when EPA acts to use or disclose the data in a manner that was authorized by law at the time of the submission." *Id.* at 1006–07, 104 S.Ct. at 2874–75. Thus, under *Monsanto* and similar cases, the in-

---

**17.** Nor is partition by sale an unusual occurrence under the laws of most states.

> All jurisdictions permit partition by sale and division of the proceeds.... Despite the substantial weight of tradition favoring partition in kind, a court can readily conclude that fair

> division is not possible and that sale and division of the proceeds is more equitable. Most partitions today are indeed in the form of sale and division of proceeds.
> R. Powell and P. Rohan, Powell on Real Property, ¶ 607[5], p. 50–58, ¶ 607[4], pp. 50–57—50–58 (Matthew Bender 1993) (footnotes omitted).

vestment-backed expectation requirement "was a way of limiting takings recoveries to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1177 (Fed.Cir. 1994). *See also Resolution Trust Corp. v. Daddona*, 9 F.3d 312, 320–21 (3d Cir.1993) (borrowers had no reasonable investment-backed expectation that they could preserve their interest in encumbered land by asserting defenses based on alleged secret agreements against FDIC, where the law at the inception of the agreements precluded that result); *Hill v. Spencer Sav. & Loan Ass'n (Matter of Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 896–98 (D.N.J.1988).

In *United States v. Security Indus. Bank*, *supra*, 459 U.S. 70, 103 S.Ct. 407, the Court considered whether § 522(f)(2), authorizing the avoidance of certain liens to the extent they impair the debtor's exemptions, should apply to liens which existed before the effective date of the Code. The Court held that it should not, on the ground that there was "substantial doubt whether the retroactive destruction of the appellees' liens in this case comports with the Fifth Amendment." *Id.* at 78, 103 S.Ct. at 412. The Court adopted the principle that "[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress." *Id.* at 81, 103 S.Ct. at 414. Implicit in that decision was the assumption that there was no unconstitutional taking effected by § 522(f) as to liens created after the effective date of the statute. *See United States v. Rodgers*, 461 U.S. 677, 697, note 24, 103 S.Ct. 2132, 2144, note 24, 76 L.Ed.2d 236 (1983) ("If there were any Takings Clause objection to [Internal Revenue Code] § 7403, such an objection could not be invoked on behalf of property interests that came into being after enactment of the provision."). The absence of retroactive application sharply distinguishes the instant case from the defendant's sole authority, *In re Persky, supra*, 134 B.R. at 90–95, which largely turned on the retroactive application of § 363(h).

The defendant could have no reasonable expectation that her interest in the residence would never be sold by the trustee if her husband commenced a bankruptcy case under chapter 7. The estate's interest in the residence was the only nonexempt asset available to satisfy over $4,000,000 in unsecured claims, making the trustee's use of § 363(h) inevitable. When this case was commenced on November 16, 1990, and when this adversary proceeding was commenced on October 21, 1991, the constitutionality of § 363(h) had never been successfully challenged in a reported decision.[18]

Congress crafted § 363(h) sedulously to minimize any takings issue, providing a right of first refusal to the non-debtor co-owner in § 363(i); requiring that the court first determine that no less invasive measures are practically available; requiring a consideration of and balancing with the detriment to the co-owner; and requiring distribution of sale proceeds "according to the interests of such spouse or co-owners, and of the estate." *See* R. Eisenberg and F. Gecker, *Due Process and Bankruptcy: A Contradiction in Terms?*, 10 BANKR.DEV.J. 47, 80 n. 231 (1993–94) ("[Section] 363(h), (i) and (j) do meet constitutional challenges. There are more than adequate protections for third parties."); *In re Townsend*, 72 B.R. 960, 967 (Bankr.W.D.Mo.1987) ("The due process issues raised by debtor were addressed by Congress when the Code was drafted.").

### 2. If there is a "taking," is it for a public purpose?

The Takings Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California, supra*, 482 U.S. at 315, 107 S.Ct. at 2385 (emphasis in original). Assuming *arguendo* that a taking would result if the plaintiff is permitted to consummate a sale under § 363(h), it still would be permis-

---

**18.** *In re Persky,* the only reported decision to find § 363(h) unconstitutional, under strikingly differ- ent facts from those present here, was issued on December 3, 1991.

sible so long as the taking is for a public purpose, it being noted that the defendant does not challenge that just compensation would be paid. *See supra*, p. 981. "[O]ne person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid." *Thompson v. Consol. Gas Utils. Corp.*, 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1937). Although I have concluded that a sale by the trustee under § 363(h) would not be a taking, I conclude in the alternative that even if it were, it would be permitted as a taking for a public purpose.

The seminal case defining the scope of the public use requirement is *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), in which the Supreme Court upheld a Hawaii land reform act that transferred fee title from a small number of feudal owners to the tenants of the land.

> The "public use" requirement is ... coterminous with the scope of a sovereign's police powers.... [T]he Court has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use "unless the use be palpably without reasonable foundation." *United States v. Gettysburg Electric R. Co.*, 160 U.S. 668, 680, 16 S.Ct. 427, 429, 40 L.Ed. 576 (1896).... [W]here the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause....

*Id.* at 240–41, 104 S.Ct. at 2329. The Court relied upon *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), which upheld a redevelopment scheme for the District of Columbia even though private individuals would be benefitted by being authorized to redevelop condemned property.

> Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation.... The role of the

judiciary in determining whether th[e] power [of eminent domain] is being exercised for a public purpose is an extremely narrow one.

*Id.* at 32, 75 S.Ct. at 102. *Accord Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992).

The mere fact that only a relatively small class may benefit from a particular "taking" does not render that taking improper. *Rindge Co. v. Los Angeles County*, 262 U.S. 700, 709, 43 S.Ct. 689, 693, 67 L.Ed. 1186 (1923) (determination of necessity for taking for public use is a legislative, not a judicial, function); *Union Lime Co. v. Chicago & N.W. Ry. Co.*, 233 U.S. 211, 34 S.Ct. 522, 58 L.Ed. 924 (1914) (spur track for benefit of a single industry served a public purpose). For example, in *Hughes v. Consol–Pennsylvania Coal Co.*, 945 F.2d 594, 613 (3d Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992), the Third Circuit found that a railroad spur which served only a single private coal company served a "public use" within the meaning of the just compensation clauses of the United States and Pennsylvania constitutions, where the spur would "tap vital coal resources, provide fuel for the Commonwealth, create jobs, and better the environment." Thus, if § 363(h) does effect a taking, it is not objectionable merely because the class of individuals who may directly benefit from the sale in any given case (primarily the creditors) may be relatively small.

Nor is a use "private" merely because property is taken from one individual and transferred to another, with resultant economic benefit to the transferee.

> The mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose. The Court long ago rejected any literal requirement that condemned property be put into use for the general public. "It is not essential that the entire community, nor even any considerable portion, ... directly enjoy or participate in any improvement in order [for it] to constitute a public use." *Rindge Co. v.*

*Los Angeles,* 262 U.S., at 707, 43 S.Ct. at 692.

*Hawaii Housing, supra,* 467 U.S. at 243–44, 104 S.Ct. at 2330–31. In *Boston and Maine Corp., supra,* 503 U.S. 407, 112 S.Ct. 1394, the Court upheld as constitutional a statute which authorized the Interstate Commerce Commission to condemn railroad track on behalf of Amtrak and reconvey the property to another private railroad. The Court held that the fact that the condemnation "resulted in the transfer of ownership from one private party to another" did not violate the public use clause "as long as the condemning authorities were rational in their positions that some public purpose was served." *Id.,* at ——, 112 S.Ct. at 1404. *See also Ruckelshaus v. Monsanto Co., supra,* 467 U.S. at 1014–15, 104 S.Ct. at 2879 (government regulation which used data of one manufacturer for the benefit of others was for public purpose of facilitating pesticide registration process); *AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. Partnership,* 6 F.3d 867, 875 (2d Cir.1993) (state statute mandating that franchised cable television broadcasters be afforded access to apartment complexes served a public purpose). As the Ninth Circuit held in *Mountain Water Co. v. Montana Dep't of Public Serv. Regulation,* 919 F.2d 593, 599 (9th Cir.1990),

> In *Hawaii Housing Authority v. Midkiff,* the Supreme Court emphasized the deference courts owe to legislative determinations of public use. A taking satisfies the constitutional public use requirement if it advances a "conceivable public purpose" and regardless of whether it succeeds in realizing that purpose. Moreover, it is not necessarily constitutionally relevant that the statute may force the transfer of private property, as here, from one private entity or individual to another.

(some citations omitted). *Cf. Head v. Amoskeag Mfg. Co., supra,* 113 U.S. 9, 5 S.Ct. 441 (act authorizing private mill owners to flood lands of others on payment of compensation was for a public purpose).

Thus I am not persuaded by the defendant's argument that because only the private creditors of a particular estate will be benefitted any given sale under § 363(h), that statute achieves no "public purpose." Public purpose is not so narrowly construed. While a § 363(h) sale in any given case will directly benefit a limited creditor body, the public policy served by that section allows a trustee to maximize the return on the sale of estate assets. The creditor body is benefitted not because of who they are, but rather because of what they are, i.e. creditors of a bankruptcy estate.

That distinction is aptly demonstrated by *Thompson v. Consol. Gas Utils. Corp., supra,* 300 U.S. 55, 57 S.Ct. 364. There, the Court struck down a Texas statute which limited the production of natural gas suppliers who had marketing facilities to sell their gas, so that those suppliers were forced to buy gas from suppliers who did not have such marketing facilities. The Court premised its conclusion on a finding by the lower court that the only purpose of the statute was to benefit those private well owners who had no marketing facilities. *Id.* at 77–78, 57 S.Ct. at 374–75. The Court noted that had the legislation been intended to promote a public purpose, such as the prevention of waste of gas or of depletion of gas owned by the non-marketing suppliers, "the fact that thereby other private persons would incidentally and gratuitously obtain important benefits would present no constitutional obstacle." *Id.* at 77, 57 S.Ct. at 374. In the instant case, the defendant does not and cannot contend that in enacting § 363(h) Congress intended to benefit the particular creditors of this estate, who did not obtain that status until some 13 years after enactment of the statute. The fact that § 363(h), which was enacted for the benefit of the public, has the incidental effect of working to the benefit of the creditors and detriment of the defendant in this particular case in no way renders the statute constitutionally infirm.

Under *Hawaii Housing,* I need only determine whether §§ 363(h) is "rationally related to a conceivable public purpose." 467 U.S. at 241, 104 S.Ct. at 2329. I conclude that it is. That purpose, as expressed in the legislative history quoted *supra* at pp. 985–86, is to collect and dispose of estate property efficiently and so as to maximize the return to creditors, and to provide for a uni-

form method of administering that process. Congressional concern over the prompt disposition of estate property is further evidenced by § 704(1), which directs the chapter 7 trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." *See Katchen v. Landy,* 382 U.S. 323, 328–29, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966) ("[T]his Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' *Ex parte Christy* [44 U.S. 292], 3 How. 292, 312 [11 L.Ed. 603]...."). Further, I conclude that §§ 363(h), (i) and (j) are narrowly tailored to accomplish that public purpose while minimizing the impact on the property rights of non-debtor co-owners.

> With respect to ... co-ownership interest, such as tenancies by the entirety, joint tenancies, and tenancies in common, *the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights....* The other interest is protected ... by giving the spouse a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property if the trustee sells the property to someone other than the spouse.

H.R.Rep. No. 595, 95th Congress, 2d Session 177 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5963, 6137–6138 (emphasis added) (footnotes omitted).[19]

Further, the absence § 363(h) could lead to an abuse of the bankruptcy process, which is fundamentally designed to provide honest debtors with a discharge *in return for* the collection of their nonexempt property for distribution to holders of allowed claims.

Most adversary proceedings under Code § 363(h) arise in chapter 7 cases in which the marital residence is the primary or only property of the estate. Except for an occasional debt which is not discharged by virtue of Code § 523 because it was incurred by fraud or for other reasons set forth therein, discharge of a debtor in chapter 7 under Code § 727(b) terminates his liability for all prepetition unsecured claims. Therefore, if the creditors do not collect anything from liquidation of the estate's interest in the marital residence, as a matter of law they do not generally have another opportunity to collect after chapter 7 because their claim is wiped out.... [T]here are different equities on the scales of justice here than there are outside of bankruptcy. That difference was one of the reasons for the enactment of Code § 363(h).

*Mueller v. Youmans (In re Youmans),* 117 B.R. 113, 119 (Bankr.D.N.J.1990). If a non-debtor spouse could insulate his or her undivided interest in the marital residence from sale by a trustee, the effect would be to provide the debtor, whose interest in that property is often the only asset in the bankruptcy estate, with an exemption well beyond that provided by Congress.

The defendant takes the position that her interest in the residence is separate from the debtor's and that the trustee cannot use § 363(h) to alienate her rights in that property. Apart from the other stated reasons that her argument lacks merit, her position is premised upon a fiction. Here, despite the fact that the trustee has succeeded to the

---

19. It is noted that the Report of the Commission on the Bankruptcy Laws of the United States recommended a provision similar to § 363(h) because of the need for uniformity of administration, the unfairness that would result to creditors where the property was held in a tenancy by the entirety, and the need to maximize the return for the debtor's interest in co-owned property. H.R. Doc. 93–137, 93d Cong., 1st Sess. 195–96 (1973), *reprinted in* App. 2 L. King, ed., *Collier on Bankruptcy* (15th ed. 1994). Further, that provision, including its constitutional ramifications and im-

pact on various forms of co-ownership, was the subject of extensive testimony before Congress. *See, e.g., H.R. 31, Bankruptcy Act Revision: Hearings Before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary,* 94th Cong., 2d Sess. 1393, 1519–1526 (1976). That testimony recognized the availability of partition for joint tenancies under the laws of most states, and indicated that it would be in the interest of all parties to have the bankruptcy court conduct the "partition" through a provision similar to § 363(h).

debtor's interest, the debtor continues to live with the defendant in and have the full use and occupancy of the residence. If the defendant's view of the law were accepted, there would be a counter-incentive for a husband and wife with equity in a residence to file a joint petition. Under her theory, if a husband alone files, his interest in the property cannot be "taken" by a trustee with the result that the trustee would abandon the property, the husband would then succeed to the trustee's interest, and the bankruptcy goal of distributing nonexempt property to creditors in exchange for a discharge to honest debtors would be defeated. *See In re Townsend, supra,* 72 B.R. at 967 ("Courts have long been aware of the injustice of permitting a married debtor to obtain a discharge from joint debts while protecting a large portion of the marital assets from the reach of joint creditors."). In enacting § 363(h), Congress balanced the inequity of granting the debtor a discharge without making a substantial, and often solitary, asset available to creditors, against the potential harm to a co-owner whose interest is sold. *See Youmans, supra,* 117 B.R. at 118–19.

The defendant further argues that because the results of a proceeding under § 363(h) could vary depending on the underlying state law, Congress has not achieved its stated public purpose of providing a standard method of selling estate property. Defendant's Reply Memorandum, filed December 15, 1993, at pp. 2–3. That argument is unavailing. First, Congress has succeeded in creating a uniform system of administration of sales under § 363(h). Second, and more to the point, "the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established." *Berman v. Parker, supra,* 348 U.S. at 33, 75 S.Ct. at 103. The defendant's "plea to substitute [her own] standard of the

public need for the standard prescribed by Congress," *id.* at 35, 75 S.Ct. at 104, must be rejected. Congress rationally could have believed that § 363(h) would promote its stated objectives, so the public use requirement is satisfied. *Hawaii Housing, supra,* 467 U.S. at 242–43, 104 S.Ct. at 2330 ("When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in the federal courts.").

### 3. *United States v. Rodgers*

I further conclude that the constitutionality of § 363(h) is strongly supported by the Supreme Court's holding in *United States v. Rodgers, supra,* 461 U.S. 677, 103 S.Ct. 2132. In *Rodgers,* the Court upheld the constitutionality of 26 U.S.C. § 7403, which "empowers a federal district court to order the sale of a family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness, but in which the taxpayer's spouse, who does not owe any of that indebtedness, also has a separate 'homestead' right as defined by Texas law." *Id.* at 680, 103 S.Ct. at 2136.[20] *Cf. In re Youmans, supra,* 117 B.R. at 120 (noting that while other sources of tax collection may be available to the government if I.R.C. § 7403 does not serve to reach the property, creditors may have no alternative remedy if § 363(h) is held inapplicable or if its scope is limited). The homestead right of the spouse under Texas law at issue in *Rodgers* is no less worthy of protection than the interest of a joint tenant under Connecticut law. In *Rodgers,* the Supreme Court held:

> It requires no citation to point out that interests in property, when sold separately, may be worth either significantly more

**20.** Texas law created a "vested property right" in the non-debtor spouse, with characteristics similar to undivided life estates in each spouse, with a remainder interest in each. *Id.* at 686, 103 S.Ct. at 2139. Because Texas law precluded the sale of the residence without the consent of both spouses, *id.* at 684–85, 103 S.Ct. at 2138, the interest was more akin to an estate by the entirety, which includes an indestructible right of survivorship, than to a joint tenancy, under which

the right of survivorship is freely terminable. Because the property interest here is a joint tenancy, entitled to less protection from forced sale than the homestead interest in *Rodgers,* the *Rodgers* holding that a co-owner's interest in what was effectively entireties property could be sold without the consent of the co-owner provides compelling support for the conclusion that the trustee's use of § 363(h) in this case is not a prohibited taking.

or significantly less than the sum of their parts. When the latter is the case, it makes considerable sense to allow the Government to seek the sale of the whole, and obtain its fair share of the proceeds, rather than satisfy itself with a mere sale of the part.

461 U.S. at 694, 103 S.Ct. at 2143. The Court considered and dismissed the Takings Clause issue:

> Admittedly, if § 7403 allowed for the gratuitous confiscation of one person's property interests in order to satisfy another person's tax indebtedness, such a provision might pose significant difficulties under the Due Process Clause of the Fifth Amendment.... If there were any Takings Clause objection to § 7403, such an objection could not be invoked on behalf of property interests that came into being after enactment of the provision.... But ... § 7403 makes no further use of third-party property interests than to facilitate the extraction of value from those concurrent property interests that *are* properly liable for the taxpayer's debt. To the extent that third-party property interests are "taken" in the process, § 7403 provides compensation for that "taking" by requiring that the court distribute the proceeds of the sale "according to the findings of the court in respect to the interests of the parties and of the United States." ... [Section] 7403 is punctilious in protecting the vested rights of third parties caught in the Government's collection effort, and in ensuring that the Government not receive

out of the proceeds of the sale any more than that to which it is properly entitled.

*Id.* at 697–98 & n. 24, 699, 103 S.Ct. at 2144 & n. 24, 2145 (emphasis in original). If § 7403, which on its face requires none of the balancing analysis designed to protect the interests of the non-debtor co-owner that are present in § 363(h), is "punctilious" in protecting the rights of that co-owner, then § 363(h) is even more solicitous of those interests. Significantly, the *Rodgers* majority reached its result notwithstanding that Texas homestead law would not have permitted creditors of the debtor spouse to reach the homestead property or to force a partition and sale of the debtor spouse's interest.

While *Rodgers* deals with the interaction of the taxing power, rather than the bankruptcy power, and the Takings Clause, that distinction is not critical.

> The power to "establish ... uniform Laws on the subject of Bankruptcies" can have no higher rank or importance in our scheme of government than the power to "lay and collect taxes." Both are granted by the same section of the Constitution....

*Ashton v. Cameron County Water Improvement Dist. No. 1, supra,* 298 U.S. at 530, 56 S.Ct. at 896.[21]

Part IV of the Court's opinion is particularly instructive. In that section the Court determined that the district court had limited equitable discretion not to order a sale of a co-owner's interest under § 7403 and stated a nonexclusive list of the factors which the district court should consider in making that

---

**21.** The *Persky* court distinguished *Rodgers* on three grounds, none of which is applicable in the instant case. *See Persky, supra,* 134 B.R. at 98–99, 104 n. 6. First, the *Persky* court noted that *Rodgers* involved a homestead interest rather than the entireties interest at issue in *Persky.* As noted *supra,* the joint tenancy at issue in the instant case does not protect the property from forced sale under Connecticut law in contrast with *Rodgers* and *Persky* where federal law authorized a creditor to affect the rights of a co-owner in a manner prohibited by state law. Second, the *Persky* court noted that I.R.C. § 7403's antiquity eliminated any question of retroactive application of the statute to existing property interests. As noted *supra* at p. 980, § 363(h) predates the plaintiff's acquisition of her property interest in the instant case. Third, the *Persky*

court pointed to the Supreme Court's statement in *Rodgers* that "the use of the power granted by § 7403 is not the act of an ordinary creditor, but the exercise of a sovereign prerogative, incident to the power to enforce the obligations of the delinquent taxpayer himself, and ultimately grounded in the constitutional mandate to 'lay and collect taxes.'" 461 U.S. at 697, 103 S.Ct. at 2144. In the instant case, however, the trustee's use of § 363(h) achieves the same result that an ordinary creditor could achieve under Connecticut law. Further, to the extent § 363(h) effects a taking it does so with no less venerable constitutional authority than I.R.C. § 7403. The taxing power is granted under a clause of Article I, § 8, just as is the bankruptcy power, and there is no reason to believe that § 363(h) is any less an act of sovereign prerogative than § 7403.

998

determination. Those factors included: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes"; (2) whether the third party "would, in the normal course of events ..., have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. *If there is no such expectation, then there would seem to be little reason not to authorize the sale*" (emphasis added); (3) "the likely prejudice to the third party," including personal dislocation costs and potential undercompensation; and (4) "the relative character and value of the nonliable and liable interests." *Id.* 461 U.S. at 710–11, 103 S.Ct. at 2151. The parallel to the factors required to be considered under § 363(h) is striking. With regard to the second factor, the court noted that a typical cotenancy arrangement under which one cotenant may seek and the other may resist a partition by sale is "further along the continuum" than sale of a homestead interest, which is not generally subject to partition. Because § 363(h)(1) requires a finding by the bankruptcy court that partition in kind is impracticable, the *Rodgers* factors support forced sale of the defendant's interest in the instant case. *Cf. United States v. Mosolowitz*, 269 F.Supp. 12, 17–18 (D.Conn.1967) (Timbers, C.J.) (government holding tax lien on taxpayer's joint tenancy interest in Connecticut residence could sell non-taxpayer's joint tenancy interest therein under Connecticut partition law, just as it could under I.R.C. § 7403).

It is also significant that even under the dissent's view in *Rodgers* § 7403, and by analogy § 363(h), could constitutionally be employed to sell the non-debtor co-owner's interest under the facts of the instant case. The dissent opined that "§ 7403 confers on the Government the power to sell or force the sale of jointly owned property only insofar as the *tax debtor's* interest in that property would permit *him* to do so; it does not confer on the Government the power to sell jointly owned property if an unindebted co-owner enjoys an *indestructible* right to bar a sale and to continue in possession.... If a joint tenant is delinquent in his taxes, the United States does no more than step into the delinquent taxpayer's shoes when it compels a sale." *Id.* at 713, 714, 103 S.Ct. at 2152, 2153 (emphasis in original; footnote omitted). As noted, *supra* at p. 983, the defendant does not enjoy an indestructible right to bar a forced sale under Connecticut law. Another court, relying on *Rodgers*, has upheld the constitutionality of § 363(h) because § 363(j) provides for compensation. *Matter of Tsunis*, 39 B.R. 977, 980 (E.D.N.Y. 1983), *aff'd*, 733 F.2d 27 (2d Cir.1984) (per curiam). The *Tsunis* court did not specifically address the argument that § 363(h) served no public purpose.

### ORDER

For the foregoing reasons, I conclude that the defendant's challenge to the constitutionality of § 363(h) and (j) must fail, the plaintiff is authorized to sell the residence, and IT IS SO ORDERED.